Peter FINNEGAN, Plaintiff,

v.

Otis BOWEN, Secretary of Health & Human Services of the United States, Defendant.

No. C86–0148J.

United States District Court, D. Wyoming.

Feb. 18, 1988.

Jeffrey A. Goldstein, Denver, Colo., for plaintiff.

Toshiro Suyematsu, U.S. Atty., Cheyenne, Wyo., for defendant.

## MEMORANDUM OPINION AND ORDER REVERSING THE FINAL DECISION OF THE SECRETARY

JOHNSON, District Judge.

THE ABOVE CAPTIONED MATTER came before this court on an appeal from a final decision of the Secretary of Health and Human Services denying plaintiff's application for entitlement to a period of disability and to disability insurance benefits. Plaintiff therefore prosecutes this action pursuant to 42 U.S.C. § 405(g), which gives this court jurisdiction to review final decisions of the Secretary of Health and Human Services.

On 10 August 1984 plaintiff filed an application for disability insurance benefits with the Secretary of Health and Human

Services, which the Secretary denied on 7 September 1984. Plaintiff's request for reconsideration was likewise denied on 19 October 1984. Plaintiff then filed a request for a hearing before an administrative law judge (ALJ) and a hearing was held on 16 July 1985.

In his decision dated 12 August 1985, the ALJ found that plaintiff could not return to his past relevant work as an iron worker, which required medium to heavy exertion, because plaintiff only retained the residual functional capacity (RFC) to perform work requiring, at best, light exertion. Although the ALJ concluded that plaintiff retained an RFC to perform a full range of light work, he nevertheless found plaintiff was entitled to a period of disability and disability insurance benefits because plaintiff possessed no acquired employment skills transferable to the light work category.

On its own motion, the Appeals Council of the Department of Health and Human Services reviewed the ALJ's 12 August 1985 decision and remanded the case for a second hearing to determine whether plaintiff possessed acquired employment skills transferable to plaintiff's retained RFC. After a second hearing held on 12 December 1985 and at which the ALJ received evidence in the form of testimony from a vocational rehabilitation expert, the ALJ found in a 21 January 1986 decision that plaintiff possessed acquired transferable skills. The ALJ therefore found plaintiff not entitled to a period of disability or to disability insurance benefits. The Appeals Council adopted the ALJ's decision in its 13 March 1986 denial of plaintiff's request for review. Plaintiff then filed a timely complaint with this Court seeking to reverse the Secretary's final decision. On 10 October 1986, the parties filed cross-motions for summary judgment.

## ISSUES

In his brief in support of his motion for summary judgment, Mr. Finnegan argues that the first ALJ erred in finding that he could perform a full range of light work because the finding was not supported by substantial evidence. He also argues that the second ALJ erred in applying the "grids" to conclude he was not disabled because the initial determination that he could perform a full range of light work was unsupported by substantial evidence. Mr. Finnegan finally argues that even if the "grids" were applicable, the vocational expert's testimony failed to establish that he possessed transferable skills because the ALJ, in his hypothetical questions to the expert, ignored Mr. Finnegan's physical restrictions and his complaints of nonexertional pain.

## FACTS

Plaintiff, Mr. Finnegan, is a 60-year old man who has not worked since 9 April 1980, after injuring his back on 4 April 1980 in a work-related accident. Mr. Finnegan attended school through the tenth grade and after his accident he attended a community college in Wyoming where he obtained an associate degree in applied science. Mr. Finnegan injured his back while working as an iron worker, a job he had done steadily for over 30 years. He has been continuously unemployed since 7 April 1980 when he was terminated, three days after his injury, which occurred while he was unloading steel plates from a truck.

The record reflects that shortly after his injury, Mr. Finnegan experienced intense pain in his back and sought medical attention on 14 April 1980 at Lusk Memorial Hospital in Lusk, Wyoming. He was then examined by Dr. Carlton D. Huitt who referred him to Dr. Philip D. Gordy, a neurological surgeon.

Dr. Gordy indicated that Mr. Finnegan's back pain increased after the accident and was located "in the mid-portion of the low back and over the coccygeal area." (ROA at 146) The pain became more severe and constant after Mr. Finnegan underwent a myelogram. In a letter to Dr. Huitt, Dr. Gordy stated as follows:

> The x-rays were reviewed. There is marked narrowing at the L5–S1 intervertebral space with surrounding spondylitic spurring. The myelogram was reviewed and this appeared to show a defect primarily on the right side at L5–S1. In view of the patient's incapacity and con-

tinued pain, plus the myelographic defect, I felt that arrangements should be made for a surgical approach to his problem. He is to enter the hospital on 6/17/80 for lumbar disk surgery. Letter from Dr. P.D. Gordy to C.D. Huitt (June 3, 1980) (discussing examination of Peter Finnegan) (ROA at 146).

On 17 June 1980 Mr. Finnegan entered Casper Memorial Hospital to undergo surgery to correct a physical impairment that had been diagnosed as lumbar spondylosis with root compression. On 18 June 1980, Mr. Finnegan underwent a laminectomy at L5–S1 bilaterally with excision of a calcified spondylitic ridge. (ROA at 140) Mr. Finnegan was discharged from the hospital on 1 July 1980. He was then awarded fifty percent partial disability by the state of Wyoming's Worker's Compensation Division. (ROA at 47).

### DISCUSSION

#### A. Disability

■ Under the Social Security Insurance Disability provisions, a person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of twelve months...." 42 U.S.C. section 1382c(a)(3)(A) (1982). The statute further provides that:

[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. section 1382c(a)(3)(B). 20 C.F.R. section 404.1520 (1985) contains a five-step sequential evaluation process by which the Secretary determines whether a person is disabled. If the Secretary determines "at any of the steps that an individual is or is not disabled, evaluation under a subsequent step is unnecessary." *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). At step one, the claimant has the burden of proving that he has not engaged in "substantial gainful activity." *Bowen v. Yuckert*, — U.S. —, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987). At step two, the claimant must prove that he has a medically severe impairment. *Id.* The secretary then determines at step three whether the claimant's "impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.* When a claimant has an impairment equivalent to one listed in 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is conclusively presumed to be disabled. However, if the Secretary determines that the claimant is not conclusively presumed disabled, the claimant must prove that he is unable to perform his past relevant work. *Bowen v. Yuckert*, 107 S.Ct. at 2294 n. 5. If the claimant meets this burden, the evaluation proceeds to the fifth step where the Secretary bears the burden of proving that the claimant retains the residual functional capacity to perform other work. *Id.; Talbot v. Heckler*, 814 F.2d at 1460. The Secretary's failure to meet this burden constitutes reversible error. *Id.* at 1466. The issue in this case is whether the Secretary met his burden at step five. In *Talbot*, the Tenth Circuit summarized the Secretary's burden at step five as follows:

The Secretary must consider the claimant's age, education, and work experience, along with residual functional capacity, in determining whether a claimant can do other work. 20 C.F.R. § 404.1520 (1986). *See Tillery v. Schweiker*, 713 F.2d 601, 602 (10th Cir. 1983). To aid the Secretary with his step five burden, the SSA has developed Medical–Vocational Guidelines, 20 C.F.R., pt. 404, subpt. P, app. 2 (1986). Sometimes called the "grid" or "grids," the guidelines relate a claimant's age, educational background, and work experience to ability to engage in work in the national

economy at various levels of exertion (sedentary, light, medium, heavy, and very heavy). If the Secretary can determine that an individual claimant precisely fits on the grids, the Secretary can use the grids to decide whether the claimant is able to do other work and is therefore not disabled.

*Id.* at 1460. In addition, the grids are inapplicable when the claimant suffers from nonexertional impairments such as pain. *Channel v. Heckler,* 747 F.2d 577, 580–81 (10th Cir.1984). *See also Turner v. Heckler,* 754 F.2d 326, 331 (10th Cir.1985), (the Secretary is not to apply the grids "when the claimant's physical limitations do not fit exactly the requirements of a particular CFR."). Thus, the Secretary "is not to automatically or mechanically apply the grids but instead must consider all the relevant facts in determining whether the nonexertional limitations diminish the claimant's ability to perform other work." *Talbot v. Heckler,* 814 F.2d at 1460.

B. Substantial Evidence Review

This court's review of the Secretary's final decision is limited to whether there was substantial evidence supporting the Secretary's findings. *Id.* at 1461. Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Although this court is not to "substitute its discretion for that of the agency," *Talbot,* 814 F.2d at 1461, the court must nevertheless "review the record as a whole, and the 'substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed.2d 456 (1951)).

In his 12 August 1985 decision, the ALJ stated in part as follows:

The claimant also related chronic pain in the joints of his hands, and wrists. Laboratory studies were not indicative of rheumatoid arthritis, however, Dr. Hall indicated that he may be in the early stages of osteoarthritis and was treated with anti-inflammatories. In addition, the claimant suffers from a moderately severe hearing deficit in his left ear. The claimant also has been evaluated for headaches which have been diagnosed as a combination of chronic sinusitis and from osteoarthritis of the cervical spine. (Exhibits 22 and 23)

At the hearing, the claimant testified he is only able to sleep approximately three hours at a time. He testified he experienced constant pain in the middle of his back radiating down his legs. Sitting was limited to a maximum of one and one-half hours.

The medical evidence indicates the claimant suffers from osteoarthritis of his hands and cervical spine in addition to decreased hearing in his left ear and chronic sinusitis resulting in chronic headaches.

Without any additional findings, however, the ALJ concluded that Mr. Finnegan had a residual functional capacity to perform a full range of light work. For the reasons stated below, the court finds there was no substantial evidence to support this conclusion.[1]

At the 16 July 1985 hearing, the following exchange occurred between the ALJ and Mr. Finnegan:

Q. [By the ALJ] Well, even if you are your own boss, doesn't that mean that you have to be on your feet most of the time? You'd be walking from place to place and looking at different things or inspecting different things? So you'd have to be on your feet.

A. [By Mr. Finnegan] Yes.

---

1. The Secretary refers to Mr. Finnegan's ability to attend school and obtain an associate degree as substantial evidence supporting the ALJ's finding that Mr. Finnegan could perform a full range of light work. In *Markham v. Califano,* 601 F.2d 533, 534 (10th Cir.1979) the court found that the ability to attend school does not establish that a person is able to engage in substantial gainful activity. Based on the record as a whole the Court does not find that Mr. Finnegan's ability to attend school supports the Secretary's finding that he could perform a full range of light work.

Q. Can you be on your feet for seven hours a day?

A. Oh, no, I couldn't do that.

Q. How long can you actually be on your feet at any one time before you become very exhausted or painful?

A. I can move around for about three hours.

Q. About three hours?

A. I can move around for about three hours then I'm wiped out.

Q. You have to lie down then?

A. I like to get home and lay down, I don't sit down, I can't sit down—I got to lay out straight on the bed.

Q. Do you have pain every day?

A. All the time.

Q. On your low back?

A. Yes, and my legs, too.

Q. It goes into your legs, too?

A. Back of my legs comes from the middle of my back right down to the groin.

Even though Mr. Finnegan testified he could only sit for an hour and one-half, the ALJ nevertheless noted that Mr. Finnegan had to stand up one-half hour after commencement of the hearing. Mr. Finnegan also testified that he had difficulty attending church because he could not remain seated for a fifty-minute service. (ROA at 43). Mr. Finnegan further testified he had difficulty helping his wife with grocery shopping because he could not lift a sack of potatoes; and that an hour and one-half was the limit on his physical activities, such as sitting, standing, and walking. (ROA at 42).

20 C.F.R. § 404.1567(b) (1985) defines light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing or when it involves sit-ting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities.

In *Talbot*, 814 F.2d at 1463, the Tenth Circuit determined the durational physical capacity needed to perform a full range of light work. The court stated as follows:

Alternate sitting, standing, or walking by implication precludes the kind of extensive sitting, standing, and walking contemplated by the definition of light activity. To elaborate, being able to sit, stand, or walk, alternately for only six hours collectively would seem to impose significant restrictions on ability to perform light work, since light work by definition is work that "requires a good deal of walking or standing, or ... involves sitting most of the time with some pushing and pulling of arm or leg controls." [Citation omitted.] It is by no means obvious that being able to walk and stand collectively for only half an eight-hour day and to sit for only two hours at a time would allow the claimant to perform substantially all of the jobs in the range of light work. Cf. *Rivers v. Heckler*, 577 F.Supp. 766 (S.D.N.Y.1984) (where durational capacity is no more than two hours a day for sitting, standing, or walking, the claimant is not capable of light work).

The court also found in *Talbot* that "[b]eing able to work less than full time would also seem to preclude the ability to perform substantially all of the jobs in the range of light work. *Id.*[2]

Although the ALJ in his 16 July 1985 decision specifically found that Mr. Finnegan could not do work requiring "prolonged walking, sitting, and standing," he nevertheless found that Mr. Finnegan could "perform a full range of light work." (ROA at 192).

2. The court in *Talbot* also cited approvingly the case of *McCoy v. Schweiker*, 683 F.2d 1138 (8th Cir.1982). In *McCoy*, the Eighth Circuit stated that "[t]he RFC that must be found if the grid is to be used, in the case of ... light work, is ... the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* at 1147.

## PAIN

■ The record is replete with evidence that Mr. Finnegan suffers from constant pain associated with his medically established back impairments and that his pain substantially restricts his daily nonwork activities. Notwithstanding this evidence, the ALJ in his 12 August 1985 decision found that Mr. Finnegan had no "nonexertional impairments." ROA at 192. Because nothing in the record contradicts a finding that Mr. Finnegan has constant pain, the ALJ's finding is incorrect as a matter of law.

In this circuit, it is axiomatic that pain can be a nonexertional impairment. *See, e.g., Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir.1988); *Gatson v. Bowen,* 838 F.2d 442 (10th Cir.1988); *Harris v. Secretary of Health and Human Services,* 821 F.2d 541, 545 (10th Cir.1987); *Teter v. Heckler,* 775 F.2d 1104, 1105 (10th Cir.1985); *Channel v. Heckler,* 747 F.2d 577, 580 (10th Cir.1984). This axiom flows inexorably from 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(e) (1985), which states that sensory limitations are nonexertional because they do not involve physical strength requirements to do work. *See also Wilson v. Heckler,* 743 F.2d 218, 222 (4th Cir.1984) (finding that pain is a sensory limitation). In *Huston v. Bowen,* at 1131, the Tenth Circuit characterized nonexertional pain as pain that the claimant constantly experiences, whether or not the claimant is engaged in work. The court indicated that sitting and lying down would appear to be primarily nonexertional in character. *Id.* The record suggests that Mr. Finnegan experiences pain while lying down in that he can only sleep three hours per night. The record clearly reflects that Mr. Finnegan experiences pain while sitting and standing. His pain therefore appears primarily nonexertional in character. The plaintiff's testimony, which the ALJ found credible, provided substantial evidence that Mr. Finnegan's pain would interfere substantially with his ability to perform a full range of light work. The court therefore concludes that the ALJ's finding of no nonexertional impairment was incorrect as a matter of law. See *Gatson v. Bowen,* supra, at 449. Mr. Finnegan in his first issue argues that

the Secretary's final decision failed to reconcile the severity of his nonexertional pain, with the conclusion that he could perform a full range of light work. Plaintiff's Brief at 7. The court agrees.

Following his laminectomy, Mr. Finnegan remained under the care of various physicians to whom he reported increased and constant pain in his back. On 20 February 1981, Dr. Huitt reported that Mr. Finnegan came to see him "with essentially the same complaints of low back pain with radiation into the hips and legs.... Medication was renewed for his pain consisting of pain medication and Clinoril and Robaxin." (ROA at 144). On 20 March 1981, Dr. Huitt reported that Mr. Finnegan's pain was unchanged. *Id.* on 15 April 1981, Dr. Huitt stated that although Mr. Finnegan felt better, plaintiff told him that his back became sore and stiff whenever he remained in a standing posture. *Id.* On 17 September 1982, Mr. Finnegan began seeing Dr. Stephen H. Martin. Dr. Martin's 17 September 1982 report states in part as follows:

He [Mr. Finnegan] treated himself conservatively at home at first, and used a lot of aspirin. He then began treating with Dr. Huet [sic], a company doctor at that time, who followed him for five or six weeks, and treated him very expectantly and did not get him better. Finally, he was sent for low back x-rays and a low back myelogram in Torrington, and apparently the myelogram was positive showing root compression and he was referred to Dr. Gordy in Casper and subsequently underwent surgery. The surgery was carried out on June 18, 1980, approximately three months after he was injured. The patient has bilateral L5–S1 laminotomy and decompression of the S1 nerve roots. Apparently they were compressed by spondylitic ridge which was removed along with minimal disk material.

Postoperatively, the patient said that he was somewhat better, but he has continued with significant pain. The operation got his low back pain better, but postoperatively, he developed bilaterally radiating sciatic-type pain but the pain has

not gone below the knee. He used narcotics for a while, but then began to use anti-inflamatori [sic] regularly and has been on just anti-inflammatories for most of the past two years. He takes Zomax 100 mg. 6–10 per day depending upon what his pain is like. Most of his pain is in the buttock and it radiates into the hips and down the back of the legs and he is not complaining much about his low back, although it hurts somewhat also. His pain has been very stable during the past two years, and he has been treated very expectantly and has been going to school for the past year, as noted. He has a low back corset-type girdle that he uses when he drives, but this helps him minimally. Otherwise he watches his physical activity and does very little around the house, etc.

(ROA at 158–159). Mr. Finnegan continued seeing Dr. Martin every two to three months over the course of at least two years. Dr. Martin's reports indicate that Mr. Finnegan had constant complaints of pain. On 8 December 1982, Dr. Martin reported Mr. Finnegan stated that "his legs hurt down the back constantly but it waxes and wanes.... He has been on Motrin taking six per day...." (ROA at 157). On 29 October 1982, Dr. Martin stated that the Zomax was not providing Mr. Finnegan much relief. *Id.* On 28 March 1983, Dr. Martin stated that Mr. Finnegan was "gradually doing more poorly, with increasing sciatic-type pain," and that the pain was "basically constant on the left for the past two or three years since the surgery. Now it is basically constant on the right. It radiates from his buttock down to his heels, and he's noting sympathetic changes such as coolness in his heels." (ROA at 156). On 20 June 1983, Dr. Martin reported that Mr. Finnegan was "complaining of pretty chronic back and leg pain, as before." (ROA at 155). In that same report, Dr. Martin noted an absence of ankle reflexes. *Id.* On 16 September 1983, Dr. Martin noted that Mr. Finnegan was "on 4 250/Naprosyns a day" and that the Naprosyn alleviated pain from neck arthritis that had developed after Mr. Finnegan's surgery. (ROA at 155). Finally on 10 October 1984, Dr. Martin stated in part as follows:

> Peter comes back for recheck. We are seeing him every two or three months. He is much worse today, he says.... He is having more right leg pain.... He has had significant lumbar stenosis and has undergone lumbar decompressive surgery at the 5/1 disk base. He has chronic signs, consisting of traumatic S/1 neuritis bilaterally. He has been very chronic and is not expected to improve. He has been awarded 50% permanent partial disability. He obviously has an extensive low back pain and work comp history. In light of this, and his age, and the fact that he is basically unskilled, in our opinion he is not reasonably employable and is not expected to become so.

(ROA at 151).

In that same report, Dr. Martin stated that "an aspect of his nonemployability [was] situational, and not on the basis of physical impairment." *Id.* However much weight may be accorded to this statement, the court observes that the ALJ did not specifically rely on it in concluding that Mr. Finnegan could perform a full range of light work. Even if the ALJ had specifically invoked this statement in his decision, there is nothing else in Dr. Martin's report to support a finding that Mr. Finnegan could perform a full range of light work. In fact, Dr. Martin stated the contrary in his 8 August 1984 report where he thought Mr. Finnegan could perform sedentary work. (ROA at 142).

■ 42 U.S.C. § 423(d)(5)(A) provides the proper standard for evaluating pain as a disability. It states in relevant part as follows:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show

the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptons [sic] alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

The Secretary argues that when judged by this standard, Mr. Finnegan's back pain is not severe enough to be disabling because clinical findings do not support the existence of disabling pain. Defendant's Brief at 3–5. The court disagrees. In *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir.1987) the Tenth Circuit interpreted this statute to require only the existence of a medical impairment that could "reasonably" be expected to produce disabling pain in some individuals. The Court held that the claimant must show only a loose nexus between the pain-producing impairment and the pain alleged. A pain-producing impairment is shown by objective medical evidence. *Id.* at 163. If the loose nexus exists, "the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling. This evidence includes the medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain." *Id.* After consideration of these factors, the decision maker may decide whether he believes the claimant's assertion of severe pain. *Id.*

The court in *Luna* also noted numerous factors in addition to medical test results that aid in determining the credibility of a claimant's subjective complaints of pain. One factor is the claimant's persistent attempts to find relief for his pain, including medical treatments and the use of pain medication. *Id.* at 165–66. Credibility is almost a non-issue because in his 12 August 1985 decision the ALJ found that Mr. Finnegan's testimony was credible. It is indisputable that Mr. Finnegan underwent a laminectomy to relieve his pain-producing impairment of spondylitis. The record reflects that he has postoperative pain related to lumbar stenosis and that he continues to experience pain associated with traumatic S–1 bilateral neuritis.[3] Mr. Finnegan consistently used various pain-killers such as Motrin and Naprosyn. The court therefore finds that a medical impairment reasonably expected to produce pain has been established and that the statement of Mr. Finnegan and his treating physicians are consistent with the medical evidence.[4]

3. As previously noted, the medical reports indicated Mr. Finnegan post-operatively developed bilaterally radiating sciatic type pain associated with his traumatic neuritis. (ROA at 151, 158–59). In B.F. Miller and C.B. Keane, *Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health,* 694 (2nd Ed.1978) neuritis is defined as an inflammation of a nerve. It further states that spinal injuries may produce sciatic-type pain. It states as follows:

> *Sciatica.* The sciatic nerve, which runs from the spinal cord down each leg, is the widest nerve in the body and one of the longest. It is exposed to many different kinds of injury in the back, in the pelvis, and along its course in the leg.
>
> Inflammation of or injury to the sciatic nerve, with resultant SCIATICA, causes pain that travels down from the back or thigh into the feet and toes. Certain muscles of the leg may be partly or completely paralyzed, so that it is difficult to move the thigh or leg. A back injury, irritation from arthritis of the spine, or pressure on the nerve that occurs during certain types of work may be the cause. Certain diseases such as diabetes mellitus or gout may be the inciting factor. The most common cause is probably a herniated or slipped intervertebral disk.
>
> Some cases of sciatica are idiopathic—that is, without known cause. However, because of the long, painful and disabling course of severe sciatica, it is worth considerable time and money to have every possible cause investigated and the underlying trouble corrected if possible. Sedatives and physical therapy may also be required to relieve the pain or disability.

*Id.* at 695.

4. In *Gatson v. Bowen, supra,* at 449–50, the Tenth Circuit summarized its holding in *Luna* as follows:

> Where medical signs and findings establish the existence of a medical impairment that reasonably could be expected to produce disabling pain in some individuals, and where statements of the claimant *or* treating physi-

In *Luna,* the court also noted as a factor the claimant's daily activities. At the 16 July 1985 hearing, Mr. Finnegan testified he could sleep only three hours at a time; and that he spent much time in bed to stretch his back. He testified that he needed to lie down to stretch every three to four hours and that he did some light yard work at home, which consisted mainly of moving around a garden hose. (ROA at 39–40).

The court finds there is a nexus between Mr. Finnegan's medical impairments and his alleged pain. The court further finds, as did the ALJ in his 12 August 1985 decision, that Mr. Finnegan's complaints of pain are credible in that his subjective complaints are consistent with the medical reports contained in the record. *See also Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir.1987) ("the law has never required and does not now require that medical evidence identify an impairment that makes the pain inevitable.") As previously noted, Mr. Finnegan's pain substantially restricts his daily activities and he has consistently used medication for pain relief. The court finds this evidence supports Mr. Finnegan's argument that his pain is sufficiently severe to be disabling. *See Luna v. Bowen,* 834 F.2d at 166 ("The decision maker has a good deal more than the appearance of the claimant to use in determining whether the claimant's pain is so severe as to be disabling."). The record reveals that Mr. Finnegan is able to sit, stand, or walk alternately for only three hours. The court therefore concludes there is a dearth of evidence to support the Secretary's finding that plaintiff can perform a full range of light work. Indeed, as previously noted, the ALJ implicitly recognized as much when he found that Mr. Finnegan could not do work requiring prolonged walking, sitting, and standing.

The Secretary points to the report of Dr. William Flick as "ample support" for his finding that Mr. Finnegan is not disabled. Defendant's Brief at 6. Dr. Flick stated that he could "find no reason to prevent [Mr. Finnegan] from returning to gainful employment immediately." (ROA at 183).

In relying on this statement, the Secretary neglects to mention that Dr. Flick, unlike Dr. Gordy and Dr. Martin, only treated Mr. Finnegan on several occasions for possible rheumatoid arthritis of the hands. In *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983), the court admonished against "adopt[ing] the facile way of disposing of an injured applicant's case by reference to, and reliance upon, the statements of one or two physicians, as against the considered statements of many physicians ... who have had more opportunity of examining and treating the applicant...." Dr. Flick treated Mr. Finnegan for a medical condition unrelated to his traumatic S–1 bilateral neuritis, his lumbar stenosis as well as the pain associated with these impairments, the principal bases for Mr. Finnegan's disability claim. The court therefore finds the Secretary's reliance on Dr. Flick's statement misplaced.

The court's review of the whole record suggests that plaintiff does not have the RFC to perform a full range of sedentary work. In *Talbot v. Heckler,* 814 F.2d at 1463 n. 5, the Tenth Circuit cited Social Security Ruling 83–12 applicable to individuals who, like Mr. Finnegan, can only sit or stand alternately. The Ruling states in relevant part that "such an individual is not functionally capable of doing either the *prolonged sitting* contemplated in the definitions of *sedentary* work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." (Emphasis added.) 20 C.F.R. § 404.1567 (1987) provides in part as follows:

> To determine the physical exertion requirements of work in the national economy, we classify jobs as "sedentary," "light," "medium," "heavy," and "very heavy." These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor.

The Dictionary of Occupational Titles has defined sedentary work as involving the

---

cians regarding the intensity and persistence of pain are reasonably consistent with the

medical signs and findings a conclusion that pain is disabling can be justifiable.

ability to sit for prolonged periods of time. For example, the Dictionary of Occupational Titles, Occupational Classification Vol. II (3rd ed. 1965) U.S. Department of Labor defines sedentary work as follows:

> Sedentary work implies a capacity to sit for at least six hours in an eight-hour day and to lift up to ten pounds maximum. The ability to walk and stand up to approximately one-third of the day (2–3 hours per day per eight-hour day) is also implied in sedentary work.

See also *Wilson v. Heckler*, 743 F.2d at 221. The most recent supplement to the Dictionary of Occupational Titles similarly defines sedentary work:

> S—Sedentary Work—Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull, or otherwise move objects, including the human body. *Sedentary work involves sitting most of the time*, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. (Emphasis added.)

Dictionary of Occupational Titles, Rating Structures of Physical Demands and Environmental Conditions, 101, (4th ed. Supp. 1986) U.S. Dept. of Labor.

As the record reflects, Mr. Finnegan is unable to sit for the prolonged periods of time necessary to perform a full range of sedentary work. Thus, because Mr. Finnegan is unable to meet any of these criteria for sedentary work, the court concludes he has the residual functional capacity to perform neither a full range of light work nor a full range of sedentary work. *See also Cavitt v. Schweiker*, 704 F.2d 1193 (10th Cir.1983), where the court found, on facts very similar to those in the instant case, insufficient evidence to support the Secretary's finding that claimant could perform sustained sedentary work.

Under 42 U.S.C. § 405(g) this court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a hearing." The Court finds that the Secretary has failed to meet his burden at step five of the disability process and shall therefore reverse his final decision denying Mr. Finnegan disability benefits. *See Talbot v. Heckler*, 814 F.2d at 1464 (reversal appropriate where the Secretary fails to meet his burden at step five of the disability process). The court shall not, however, remand this case for additional factfinding because it finds there is substantial record evidence of plaintiff's inability to perform a full range of light or sedentary work. *See Harris v. Secretary of Health and Human Services*, 821 F.2d 541 (10th Cir.1987) (holding that remand for additional fact-finding is inappropriate where the record contains substantial evidence that a claimant lacks the exertional capacity to perform sedentary work). Because the court concludes that Mr. Finnegan lacks the exertional capacity to perform either light or sedentary work, the court will not address the plaintiff's other issues of whether the ALJ erred in applying the grids or whether the second ALJ committed reversible error for failing to include in his hypothetical questions to the vocational expert plaintiff's physical restrictions and nonexertional impairment of pain.

The only conclusion supported by substantial evidence in the record is that Mr. Finnegan has been disabled from the date of his inability to work on 9 April 1980. It is therefore the ORDER of this court that the final decision of the Secretary denying plaintiff benefits be, and the same hereby is, REVERSED and the cause is remanded to the Secretary with instructions to calculate and award disability insurance benefits to the plaintiff.

Plaintiff is also entitled to an award of attorney's fees under 42 U.S.C. § 406(b)(1). The amount shall be determined after plaintiff has properly filed a petition in accordance with 42 U.S.C. § 406(b)(1). *See also Gatson v. Bowen*, at 450 and *Harris v. Secretary of Health and Human Services*, 836 F.2d 496 (10th Cir.1987).