**Marion WILSON, Appellant,**

v.

**Margaret H. HECKLER, Secretary of Health and Human Services, Appellee.**

**No. 83–1713.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 12, 1984.

Decided Sept. 4, 1984.

John R. Lomax, Virginia Beach, Va. (Fine, Fine, Legum & Fine, Virginia Beach, Va., Samuel W. Bearman, Pensacola, Fla., on brief), for appellant.

John Newton, Jr., Dept. of Health and Human Services, Washington, D.C. (Beverly Dennis, III, Regional Atty., David L. Hyman, Asst. Regional Atty., Philadelphia, Pa., Elsie L. Munsell, U.S. Atty., Michael A. Rhine, Asst. U.S. Atty., Norfolk, Va., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WIDENER, Circuit Judge:

This is an appeal from the judgment of the district court which affirmed the denial of disability benefits to appellant Marion

Wilson. We vacate and remand with instructions.

Mrs. Wilson, 43 years old at the time of her hearing, had a high school education and 3 years' nurse's training. She had been employed until August 1979 as a nurse. She claims she is disabled because of a back problem, caused at least in part by a fall in January 1980, which leaves her in constant pain and incapable of substantial gainful activity.

At her hearing before the Social Security Administration, the ALJ received evidence submitted by Mrs. Wilson's various treating physicians, as well as the testimony of Mrs. Wilson and her husband. Evidence by way of letter from a Certified Personnel Consultant was received later as well as a deposition from Dr. Flynn, a treating physician and a board certified orthopedic surgeon. Prior to deciding the case, the ALJ requested a further orthopedic examination, arranged by the Florida Department of Health and Rehabilitative Services with a Dr. Marshall, also a board certified orthopedic surgeon.

Mrs. Wilson's claim for disability has as its principal basis the condition of her back which was apparently brought to a head by a fall in January 1980. Since that time, she has been hospitalized several times and undergone a laminectomy in an effort to get some relief for her back. The records of her treating physicians, Dr. Dillard, Dr. Geuss, and Dr. Kahan, and the deposition of Dr. Flynn show ongoing back problems. Although each doctor was able to provide some relief, their records show no cure was effected. In addition to the problem with her back, Mrs. Wilson has had an operation on her right knee, following which she has worn a brace on her knee, and an operation on her right wrist to correct carpal syndrome.

The parties are in agreement that Mrs. Wilson's back problems, wrist injuries, and knee injury preclude her from returning to her former substantial gainful activity as a nurse. Thus, the burden is on the Secretary to identify jobs in the national economy that she can perform. *Hall v.*

*Harris,* 658 F.2d 260 (4th Cir.1981). To meet this burden, the Supreme Court has, in *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), approved the use of the tables or grids found in 20 C.F.R. Part 404, subpart P, Appendix 2, to carry the Secretary's burden to establish disability in cases to which they apply. In our case, the Secretary has chosen to rely on the grids instead of producing evidence, such as that of a vocational expert, in order to establish that Mrs. Wilson is not disabled.

The treating physicians' reports in general relate the history of her various ailments. Of particular interest is the deposition of Dr. Flynn, a board certified orthopedic surgeon who performed the operation on plaintiff's right knee and treated her otherwise. He first saw Mrs. Wilson April 15, 1981, at which time she complained of pain in the neck, back and knee. After conservative treatment, Dr. Flynn operated on her knee. His diagnosis of her may be summarized as a partial tear of both of the meniscus in the knee; arthritic changes in the knee; spinal disc disease at L4–5, with subtle slippage of the discs; scattered degenerative changes slightly greater at L1, L2; moderate disc disease at C–4, C–5; significant degenerative changes from C–3 through C–6 involving the joints of Luschka with bilateral neural foraminula encroachment; moderate to severe arthritis of the neck, with evidence of some entrapment of the nerves in the neck; possible entrapment of the nerves in the the lower back; ligament and cartilage problems in the knee; and the loss of two discs in the back. Dr. Flynn was of opinion she was unemployable, and that she should not sit longer than 30 minutes at a time because of the increased stress placed on the discs and because of the arthritis of the spine. Standing, he said, would be a problem because of her bad arthritic knee imposed on the bad lumbar spine. He said that she would obviously feel the pain. He further said that if she sat for a long period of time her back and knee would get stiff and swell so that when she got up she would be

unable to walk, and that she would have trouble lifting, bending, stooping or stair climbing. He also stated that she had nerve damage involving her hands and some nerve damage involving her leg. He did not believe she was employable since he first saw her on April 15, 1981.

Dr. Marshall, to whom the plaintiff was referred by the ALJ, examined her thoroughly. His diagnosis was that she had degenerative arthritis of the cervical thoracic and lumbar spine, with degenerative cervical intervertebral disc disease C–4–5; degenerative thoracic disc disease and degenerative L4–5 and L5–S–1 lumbar intervete disc disease; postop L4–5 lumbar laminectomy; exogenous obesity; status postop right carpal tunnel release; status postop right arthroscopic surgical procedure with clinical evidence of degenerative arthritis and patella femoral chomdromalacia bilateral. Dr. Marshall found that she could sit, stand or walk for no more than an hour at a time, and that during an 8-hour day she could sit no more than 4 hours, stand no more than 2 hours, and walk no more than 2 hours. She could lift up to 10 pounds occasionally and never lift 11 pounds or more. She could carry 6 to 10 pounds occasionally but never carry 11 pounds or more. She could do light but not heavy pushing or pulling of arm controls. She could not bend, squat, crawl or climb at all but could reach occasionally. She was totally restricted from unprotected heights, moderately restricted from being around machinery, and mildly restricted from driving automotive equipment.

It is at once apparent that Dr. Marshall's clinical findings were not significantly different from those of Dr. Flynn. Neither were his conclusions as to Mrs. Wilson's functional limitations except that Dr. Marshall generally was of opinion that her functional limitations were less. We emphasize that there is nothing in the record from any treating or examining physician any more beneficial to the Secretary than Dr. Marshall's report.

The ALJ found, however, that "the clinical findings in the [Dr. Marshall's] examination, however, did not support the severity shown in the physical capacities evaluation." With this as a basis, he went on to find that the plaintiff had not "suffered such reduction of functional capacity as to be precluded from engaging in sedentary work activity" and found that she could engage in sedentary work activity. He then applied Rule 201.29 of the grids and concluded that she was not disabled.

In finding that Dr. Marshall's clinical findings did not support his conclusions as to plaintiff's functional limitations, the ALJ erroneously exercised an expertise he did not possess in the field of orthopedic medicine. Not only for that reason, but because Dr. Marshall's diagnosis and conclusions were supported by those of Dr. Flynn, a treating physician, both of which were uncontradicted except as they differed from each other in degree, we are of opinion the finding of the ALJ that plaintiff's functional capacity was any greater than that described by Dr. Marshall is without substantial evidence to support it.

Sedentary work is defined in 20 C.F.R. § 404.1567(a) as lifting no more than 10 pounds at a time and occasionally carrying articles such as docket files, etc. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is necessary in carrying out job duties, and jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. The same section provides that sedentary has the same meaning as in the *Dictionary of Occupational Titles* (DOT) published by the Department of Labor. The *Dictionary of Occupational Titles* provides that:

"Sedentary work implies a capacity *to sit for at least 6 hours in an 8-hour day* and to lift up to 10 pounds maximum. The ability to walk and stand up to approximately one-third of the work day (2–3 hours per day per 8-hour day) is also implied in sedentary work." (Italics added)

See *Van Huss v. Heckler*, 572 F.Supp. 160 (W.D.Va.1983). In S.S.R. 83–10, the Social

Security Administration has provided in an elaboration of the activities needed to carry out the requirements of sedentary work that "jobs are sedentary if walking and standing are required occasionally and *other sedentary requirements are met.*" (Italics added) Further, Appendix 2, Medical-Vocational Guidelines, § 201.00(h), includes: "However, a finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who did not have the ability to perform a full range of sedentary work." See also *Hall v. Harris*, p. 266. A standard text on the subject, *Social Security Claims and Procedures*, McCormick, (3d Ed.1983), § 488G lists five factors which, if any of them exist, restricts work to less than the full range of sedentary activity. Our case meets not only one but two of them, which are: "Inability to perform the minimal standing or walking required by sedentary work, *or inability to do prolonged sitting,*" and "Can do work as long as alternating sitting and standing, i.e., *cannot sit at least 6 hours/8-hour day.*" (Italics added)

■ Pain aside, which we will later address, we think that the ALJ erred in applying the grids to find the plaintiff was not disabled. First, the plaintiff could not sit for 6 hours a day as required by the DOT definition for sedentary work; certainly she was precluded from prolonged sitting. While a sedentary job entails no significant stooping, S.S.R. 83–10, the plaintiff was severely limited in bending, squatting, crawling and climbing, and could only reach occasionally. Thus, she could not perform a full range of sedentary work on that account also.

Pain, which is sensory and thus a non-exertional impairment, 20 C.F.R. Part 404, subpart P, App. 2, § 200.00(e), was admittedly suffered by the plaintiff, and in such a case, since plaintiff suffers both exertional and non-exertional limitations, the tables are not conclusive but may only serve as guidelines. 20 C.F.R. 404, subpart P, Appendix 2, § 200.00(e)(2); *Gory v. Schweiker*, 712 F.2d 929, 931 (4th Cir.1983).

Thus, we are of opinion the tables or grids should not have been relied upon by the Secretary in order to establish disability conclusively.

■ Since the tables or grids could not be relied upon to furnish the evidence of disability or non-disability, the Secretary had the burden of offering other evidence to that effect, especially of a job in the national economy which the plaintiff could perform. *Hall v. Harris, supra.* But no vocational expert testified. Neither does the Secretary point to anything in the record to support her sought for conclusion. Since the Secretary has not shown that the plaintiff was not disabled and has not shown there was a job in the national economy which the plaintiff could perform, absent other evidence, the presumption in favor of the plaintiff, admittedly in effect by the finding that she could not perform her previous substantial gainful employment, should carry the day in her favor and require that judgment be so entered.

The judgment of the district court is vacated and the case is remanded to the district court with instructions to further remand the case to the Secretary. If the Secretary offers additional evidence as to disability, then the case should be reconsidered in the light of that evidence and such additional evidence as the plaintiff, of course, may offer should she be so advised. If there is no additional evidence offered as to disability, then judgment should go for the plaintiff.

■ We note that the question of the date of the onset of disability that the evidence supports has not been addressed with any particularity in the proceeding. That question is of sufficient consequence for us to express our confidence that a finding as to the date of the onset of disability will be made if benefits are awarded. This is not to infer that such would not ordinarily be done, but only to call the matter to the attention of the parties. In this respect, we are not impressed with the position of the Secretary that, even if plaintiff has been proven to be totally disabled at a later date than that claimed, the administrative decision should be affirmed

and plaintiff required to file another claim solely because of the difference in the dates of onset of disability. It is admittedly within the authority of the Secretary to find a different date for the onset of disability than that claimed, and a failure so to do in a proper case would be an obvious abuse of discretion.

VACATED AND REMANDED WITH INSTRUCTIONS.