885 F.2d 865
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donna Moore MOZINGO, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 88-2136.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 9, 1989.
Decided Sept. 5, 1989.
 
 E.D.N.C.
 REVERSED AND REMANDED.
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Malcolm J. Howard, District Judge. (C.A. No. 87-67-4).
 Jack Sidney Hansel (Pamlico Sound Legal Services on brief) for appellant.
 Paul M. Newby, Assistant U.S. Attorney (Margaret Person Currin, United States Attorney, James G. Carpenter, Assistant United States Attorney on brief) for appellee.
 Before ERVIN, Chief Judge, and DONALD RUSSELL and WIDENER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Donna Moore Mozingo appeals the decision of the district court, which affirmed the denial of her Supplemental Security Income benefits by an Administrative Law Judge (ALJ). Finding that the ALJ's decision was not supported by substantial evidence, we reverse and remand to the Secretary with an order to award Ms. Mozingo the benefits she seeks.
 
 
 2
 Plaintiff-appellant Donna Mozingo applied for Supplemental Security Income ("SSI") benefits in June, 1985, alleging that mental and physical impairments had rendered her completely disabled. At the time of her application, Mozingo was 34 years old. She requested and received a hearing before an ALJ in July, 1987. The ALJ found that Mozingo did not suffer from a severe mental impairment and that, despite her severe physical impairment, she retained the functional capacity to perform sedentary work.[1]
 
 
 3
 The Secretary, relying on the findings of the ALJ, issued a final decision denying Mozingo benefits. She subsequently filed the current action pursuant to 42 U.S.C. Secs. 405(g) and 1383(c)(3), seeking to overturn the Secretary's decision. The district court granted summary judgment in favor of the Secretary, on the grounds that the findings of the ALJ were supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390, 28 L.Ed.2d 842, 846 (1971).
 
 I. Mental Impairment
 
 4
 A mental impairment is so severe as to qualify a claimant for SSI benefits if it is equivalent to an impairment listed in Appendix 1 of the Social Security Regulations. 20 C.F.R. Sec. 416, 920. Mozingo argues that she suffers from a disabling "personality disorder," as that term is defined in Appendix 1. Section 12.08 of Appendix 1 provides:
 
 
 5
 12.08 Personality Disorders: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.
 
 
 6
 The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
 
 
 7
 A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
 
 1. Seclusiveness or autistic thinking; or
 
 8
 2. Pathologically inappropriate suspiciousness or hostility; or
 
 
 9
 3. Oddities of thought, perception, speech and behavior; or
 
 
 10
 4. Persistent disturbances of mood or affect; or
 
 
 11
 5. Pathological dependence, passivity, or aggressivity; or
 
 
 12
 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior; AND
 
 B. Resulting in three of the following:
 
 13
 1. Marked restrictions of activities of daily living; or
 
 
 14
 2. Marked difficulties in maintaining social functioning; or
 
 
 15
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 16
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).
 
 
 17
 20 C.F.R. Part 404, Subpart P, App. 1, Sec. 12.08.
 
 
 18
 Mozingo undeniably suffers from what is known as a "borderline personality disorder," a disorder characterized by "great mood swings, very low self-esteem," and "self-destructive" behavior. The relevant question, therefore, is whether this disorder rises to the level of severity required by Sec. 12.08 for the award of benefits.
 
 
 19
 The evidence before the ALJ shows that for approximately three years Mozingo has undergone treatment for this disorder at the Tideland Mental Health Center (Tideland). Her treatment has consisted of drug therapy with the anti-anxiety medication xanax and participation in Tideland's "Shamrock Clubhouse," a type of group therapy program which, under the supervision of a psychiatrist, attempts to help patients adjust through "work and activities of daily living and socialization."
 
 
 20
 At the administrative hearing, Mr. Dennis Brewster, the clinical social worker who directs the Shamrock Clubhouse program, testified to Mozingo's "dramatic mood swings." Mozingo, he stated, would frequently shift from being withdrawn and suicidal to behaving in a perfectly normal manner. Brewster also testified about Mozingo's involvement in "self-destructive" relationships with abusive men, and explained that because of her inability to cope with any sort of stress and her tendency toward sudden, uncontrollable anger, she had been unable to hold down a job. Brewster conceded that Mozingo was usually able to perform well at Shamrock Club, and had been able to care for her child. He explained, though, that the Club tried hard to eliminate any type of pressure, and although he did not "know" why Mozingo could care for her child and not hold down a job, it was his personal opinion that she could not function in the working world.
 
 
 21
 The record also contains three psychiatric evaluations of Mozingo. The first, conducted by Dr. Phillip Robbins[2], supervisor of the Shamrock Club program and Mozingo's treating psychiatrist, indicated that plaintiff suffered from a "severe personality disorder," and that she could not stay at a job for longer than two weeks because "she loses her temper and cannot deal with other people." The second, performed by Dr. Victor Mallenbaum, diagnosed Mozingo as having a "borderline personality disorder," and stated that although she was capable of understanding simple instructions, Mozingo probably would not be able to carry them out very effectively. Dr. Mallenbaum also suggested that Mozingo not be allowed to attempt to manage benefits on her own behalf. The third evaluation, performed by Dr. R.R. Ratcliffe, again diagnosed Mozingo as having a "[p]ersonality disorder ... primarily borderline." Dr. Ratcliffe stated that while Mozingo's "overall responsibility is difficult to tell in one interview," she "could probably perform simple, routine, repetitive tasks with encouragement and minimal pressure of deadline and supervisory stress."
 
 
 22
 The ALJ determined that Mozingo has no "mental impairment which would significantly compromise her ability to perform basic mental work-related activities." The ALJ based his conclusion on Mozingo's participation in the Shamrock Clubhouse Program, and the testimony of Dr. Ratcliffe. In view of the entire record, however, we cannot find that these two factors constitute the substantial evidence that is required to support the ALJ's decision.
 
 
 23
 The Secretary's reliance on Mozingo's participation in the group therapy program as evidence of her ability to interact with other individuals is unjustified for two reasons. First, such reliance ignores the testimony of the program's director, Dennis Brewster, that after observing Mozingo in this group setting over a three year period, it was his opinion that she could not function in the working world. Mr. Brewster is a clinical social worker with over fifteen years of experience in dealing with personality disorders. He has had the opportunity to observe Mozingo on an almost daily basis for an extended period of time. In the absence of some factor undermining his credibility, Mr. Brewster's testimony is entitled to some weight. The ALJ's decision, however, gave it none.
 
 
 24
 Furthermore, the relevant social security regulations caution fact finders that, when evaluating claimant's with personality disorders such as Mozingo's:
 
 
 25
 highly structured and supportive settings may greatly reduce the mental demands placed on an individual. With lowered mental demands, overt signs and symptoms of the underlying mental disorder may be minimized. At the same time, however, the individual's ability to function outside of such a structured and/or supportive setting may not have changed. An evaluation of individuals whose symptomatology is controlled or attenuated by psychosocial factors must consider the ability of the individual to function outside of such highly structured settings.
 
 
 26
 20 C.F.R. Part 404, Subpart Part P, App. 1, Sec. 12.00(F).
 
 
 27
 The evidence in this case demonstrated that Mozingo performs well enough, but not exceptionally well, in the highly structured setting of the Clubhouse program, and that she is simply unable to deal with people outside of that setting.
 
 
 28
 Most significant, however, is the ALJ's failure to give proper weight to the testimony of Dr. Robbins, Mozingo's treating physician. The ALJ chose instead to rely on the assessment of Dr. Ratcliffe, a psychiatrist who examined Mozingo only once. In this circuit, however, "the opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir.1986); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir.1983).
 
 
 29
 Dr. Ratcliffe himself conceded that Mozingo's "overall responsibility is difficult to tell in one interview" and that she "could probably perform" only a limited number of jobs under admittedly limited circumstances. Clearly, such testimony is insufficient to overcome the great weight which must be afforded Dr. Robbins' opinion. Furthermore, the only other psychiatrist of record, Dr. Mallenbaum, corroborated Dr. Robbins' assessment of Mozingo's functional capabilities. The objective medical evidence of record, therefore, dictates a finding that Mozingo suffers from a personality disorder that falls within the listing of disabling impairments found in Sec. 12.08. For that reason, we reverse the Secretary's decision, and remand this case to the district court for remand to the Secretary with an order to award Mozingo the benefits she seeks.
 
 
 30
 REVERSED AND REMANDED.
 
 
 
 [1]
 Sedentary work is defined as work which "entails lifting a maximum of ten pounds" and requires a limited amount of walking and standing. See Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir.1984)
 
 
 [2]
 Dr. Robbins' report was submitted after the date of the hearing, but before the date of the ALJ's decision. It is therefore considered part of the record