WILLIAMS, Circuit Judge.
Essie Morgan injured her back at work. Complaining of severe pain, she had surgery fusing several cervical vertebrae. The surgery, however, did not abate her complaints. An ALJ denied Morgan’s application for Social Security benefits, and the district court affirmed. Morgan now appeals.
We conclude that because of faulty hypothetical questions the ALJ posed to the vocational expert, the record lacks substantial evidence to support the ALJ’s finding that jobs exist in the national economy for someone with Morgan’s impairments. We therefore vacate and remand the district court’s order with instructions to vacate and remand the ALJ’s order. On remand, the ALJ must reevaluate Morgan’s residual functional capacity (RFC), and accept such additional testimony as may be necessary to decide whether relevant jobs exist.
Because, however, the ALJ’s errors, if any, with respect to the application of the treating physician rule were harmless, and the ALJ’s decisions discrediting Morgan’s allegations and the responses of Morgan’s husband and daughter were supported by substantial evidence, the ALJ need not reevaluate his decision on these matters on remand.
I. Factual Background
Morgan was employed as a cashier at a convenience store in Aiken, South Carolina. In March 2000, she hurt her back scanning a twelve-pack at work. She visited Dr. Douglas Holford, an orthopedic surgeon, who, in April 2000, performed surgery on Morgan removing two discs and fusing three cervical vertebrae. Under Dr. Holford’s care, Morgan returned to light-duty, part-time work. In August 2000, Morgan began complaining of pain in her lower back and legs, and Dr. Holford’s *719 first impression was that the pain was caused by degenerative disc disease and sciatica. Nevertheless, Dr. Holford authorized her to increase to moderate-duty, full-time work.
Morgan continued complaining of pain, and in January 2001, Dr. Holford referred Morgan to Dr. William Kirkley, an orthopedist, for testing. Dr. Kirkley concluded from the tests results that Morgan’s pain was “subjective,” (R. at 171), and was not caused by her underlying condition. In February 2001, Morgan quit her job. Dr. Holford later ordered a Functional Capacity Exam (FCE) to test Morgan’s functional restrictions. The FCE indicated that although Morgan’s functional ability was limited, she could nevertheless work an eight-hour day.
On March 20, 2001, Morgan filed applications for Social Security benefits. At the hearing on Morgan’s claim, the ALJ admitted evidence as to the scope of Morgan’s impairment. The most salient pieces of evidence were the FCE, Drs. Holford’s and Kirkley’s reports, Morgan’s testimony, and written responses to questionnaires completed by Morgan’s husband and daughter. The ALJ also accepted testimony from a vocational expert, who testified regarding the availability of jobs in the national economy.
After weighing this evidence, the ALJ denied Morgan’s claim. The Appeals Counsel affirmed the ALJ’s decision, as did the district court. Morgan now appeals, and we have jurisdiction under 28 U.S.C.A. § 1291 (West 1993).
II. Discussion
Morgan argues that: (1) the vocational expert’s testimony was insufficient evidence on which the ALJ could conclude the national economy had jobs for someone with her functional restrictions; (2) the ALJ improperly applied the treating physician rule in discrediting the opinion of Dr. Holford; (3) the record lacked substantial evidence upon which the ALJ could discredit her allegations of disabling pain; and (4) the ALJ erred in rejecting the written questionnaire responses submitted by Morgan’s husband and daughter regarding her pain.
We must uphold the ALJ’s factual findings “if they are supported by substantial evidence and were reached through application of the correct legal standard.” Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996). “Substantial evidence is ‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’ ” Id. (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). “It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.” Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). “In reviewing for substantial evidence, we do not ... reweigh conflicting evidence, make credibility determinations, or substitute” the ALJ’s judgment with our own. Craig, 76 F.3d at 589.
With these principles in mind, we address Morgan’s arguments in turn.
A. The Vocational Expert’s Testimony
Morgan first argues that her FCE reveals that her functional capacity is more limited than the hypothetical the ALJ posed to the vocational expert, and that this fact resulted in the record lacking any relevant evidence on the question of whether she could engage in work that exists in the national economy. We agree.
The parties concede that the ALJ properly resolved the first four steps of the Social Security Administration’s five-step *720 sequential evaluation process.[1] The fifth step, however, is in dispute. The claimant is disabled at the fifth step if the ALJ determines that the claimant cannot “engage in any ... kind of substantial gainful work which exists in the national economy.”[2] 42 U.S.C.A. § 423(d)(2)(A) (West 2003).
To decide whether the claimant is disabled under this standard, the ALJ must proceed in a two-tiered analysis. The ALJ must first determine the claimant’s RFC. See 20 C.F.R. § 404.1520(a)(4)(v), (e) (2004).[3] The “RFC is an assessment of the individual’s ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.” Social Security Ruling (SSR) 96-8p at *1. To determine the claimant’s RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant’s condition in the record, including testimony from the claimant and family members. 20 C.F.R. § 404.1529(c)(3) (2004).
The ALJ must then decide the ultimate issue of whether the Commissioner has satisfied her burden of showing that the claimant can engage in a job that “exist[s] in significant numbers in the national economy.” 20 C.F.R. § 404.1560(c)(1) (2004); 20 C.F.R. § 404.1560(c)(2) (providing that the Commissioner bears the burden at the second tier of step five); Wilson v. Heckler, 743 F.2d 218, 220 (4th Cir.1984) (same). In deciding whether the Commissioner has met her burden, the ALJ generally must accept evidence from a vocational expert, who, based on the claimant’s age, education, work experience, and RFC, testifies whether there are jobs for such a person in the national economy. See 20 C.F.R. § 404.1520(g)(1). The Commissioner can show that the claimant is not disabled only if the vocational expert’s testimony that jobs exist in the national *721 economy is in response to questions from the ALJ that accurately reflect the claimant’s work-related abilities. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989).[4]
In this case, after considering the evidence presented, the ALJ relied primarily on the FCE in deciding Morgan’s RFC. (R. at 15 (“I give greater weight to the results of actual testing[, i.e., the FCE,] than I do the opinion of Dr. Holford, especially in light of Dr. Kirkley’s opinion.”).) The FCE determined, in relevant part, that Morgan was not able to do full time “sedentary” work, but she could work a full 8-hour day only if the job required her to sit, stand, walk, or climb each for no more than % of the day, or, in other words, she could do each activity for no more than 2 hours and 40 minutes per day. In determining Morgan’s RFC, however, the ALJ found that Morgan was not able to do full-time “sedentary” work, but she could work a full 8-hour day at a “sedentary” job if the job also allowed her to have a “sit/ stand option.” (R. at 16.)
Morgan contends that the FCE’s sit, stand, walk, or climb combination is more restrictive than the RFC’s “sit/stand option.” We agree. Whatever a “sit/stand option” is, it provides only for sitting and standing, and, even interpreted in the manner most consistent with the FCE, it still provides that Morgan may sit or stand for of an 8-hour day, or 4 hours. The “sit/stand option” would therefore require Morgan to sit and stand significantly longer than the restrictions indicated by the FCE.
The ALJ’s error with respect to Morgan’s RFC, moreover, translated into deficient hypotheticals the ALJ posed to the vocational expert. Each of the ALJ’s hypotheticals assumed that Morgan could work a full eight-hour day alternating sitting and standing. (R. at 56-57.) According to the FCE, however, Morgan must also have the ability to walk or climb for Jé of the day in order to complete a full eight-hour workday. The vocational expert’s testimony that the national economy has a significant number of jobs for an employee who is able to work a full eight-hour day alternating sitting and standing was therefore incapable of producing a reliable assessment of relevant work opportunities for Morgan. See Walker, 889 F.2d at 50.
B. Dr. Holford’s Opinions
Morgan next argues that the ALJ erred in failing to credit the opinions of Dr. Holford under the treating-physician rule. For the reasons that follow, we hold that the FCE was substantial evidentiary support for the ALJ’s decision to discredit Dr. Holford’s legal conclusions and that even if the ALJ erred in rejecting what we will assume is Dr. Holford’s medical opinion, such error was harmless.
The Code of Federal Regulations draws a distinction between a physician’s medical opinions and his legal conclusions. “Medical opinions are statements from physicians ... that reflect judgments about the nature and severity of [the claimant’s] impairments), including ... symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairments), ... and [the claimant’s] physical or mental restrictions.” 20 C.F.R. § 404.1527(a)(2) (2004). Legal conclusions, on the other hand, are opinions on issues reserved to the ALJ, *722 such as “statements[s] by a medical source that [the claimant is] ‘disabled’ or ‘unable to work.’” 20 C.F.R. § 404.1527(e)(1). While the ALJ must give a treating physician’s medical opinions special weight in certain circumstances, Craig, 76 F.3d at 590 (holding that a treating physician’s medical opinion must be given controlling weight only when it “is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence” in the record (quoting 20 C.F.R. § 404.1527(d)(2))), the ALJ is under no obligation to give a treating physician’s legal conclusions any heightened evidentiary value. See 20 C.F.R. § 404.1527(e)(3) (“We will not give any special significance to ... [a treating physician’s legal conclusions]____”). The ALJ is not free, however, simply to ignore a treating physician’s legal conclusions, but must instead “evaluate all the evidence in the case record to determine the extent to which the [treating physician’s legal conclusion] is supported by the record.” SSR 96-5p at *3.
In her brief, Morgan points to four opinions given by Dr. Holford: (1) “she probably qualifies for disability,” (R. at 293); (2) “[h]er functional capacity evaluation basically figures that she can’t work a total of an 8 hour day,” (R. at 292); (3) “[s]he can possibly do modified duty [from her cashier job] but it would probably be a 4 hour day,” (R. at 293.); and (4) “it would be hard [for her] to sit or stand for a 5 hour day.”[5] (R. at 317.) The ALJ discredited Dr. Holford’s opinions, noting that
statements that a claimant is “disabled”, “unable to work,” can or cannot perform a past job ... or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the [Code of Federal Regulations] and legal standards set forth therein. Such issues are reserved to the Commissioner.... Opinions on issues reserved to the Commissioner, such as [those] of Dr. Holford, can never be entitled to controlling weight.... I give greater weight to the results of actual testing[, ie., the FCE,] than I do the opinion of Dr. Holford.
(R. at 15.) The ALJ did not err in concluding that at least the first three of Dr. Holford’s opinions were legal conclusions and were thus deserving of no special weight. Dr. Holford’s first two opinions— that Morgan was “disabled” and that she “can’t work” an 8 hour day — are clearly legal conclusions. See 20 C.F.R. § 404.1527(e)(1). Dr. Holford’s third opinion is also a legal conclusion: an opinion that Morgan cannot complete the duties of her previous job is merely a legal conclusion on an issue reserved for the ALJ at the fourth step of the sequential evaluation process. See 20 C.F.R. § 404.1520(a)(4)(iv) (“At the fourth step ----[i]f you can still do your past relevant work, we will find that you are not disabled.”). Moreover, the FCE was substantial evidence to support the ALJ’s decision to discredit these legal conclusions.
It is a closer question whether Dr. Holford’s fourth opinion — that “it would be hard [for Morgan] to sit or stand for a 5 hour day” — is a medical opinion. Even *723 assuming, however, that this opinion is a medical opinion due special weight under the treating-physician rule, any error in failing to credit this opinion was harmless. The ALJ attempted to adopt the FCE in determining Morgan’s RFC. As Morgan herself recognizes, however, the FCE does not materially contradict Dr. Holford’s (assumed) medical opinion. Dr. Holford’s opinion was that Morgan would have difficulty sitting and standing for more than 5 hours. Nothing in his opinion is meaningfully contradicted by the FCE’s determination that Morgan could not sit and stand for more than % of an 8-hour day, or 5 hours and 20 minutes, but that she could also walk or climb the remainder of the 8-hour workday. Any error the ALJ may have made in rejecting Dr. Holford’s medical opinion, which provided essentially the same time restriction on sitting and standing as the FCE, was therefore harmless.[6] Cf. Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir.2004) (“While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.” (internal quotation marks omitted)).
C. Morgan’s Testimony
Morgan also argues that the sources on which the ALJ relied to discredit her own testimony regarding the disabling nature of her pain were not substantial evidence. For the following reasons, we hold that the opinion of Dr. Kirkley and the FCE were substantial evidentiary support for the ALJ’s decision to discredit Morgan’s testimony.
In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. First, because pain alone, no matter how disabling, cannot create a “disability” under the Social Security Act without an underlying medical condition that causes the pain, the ALJ must determine whether the claimant has produced medical evidence of a “medically determinable impairment which could reasonably be expected to produce .... the actual pain, in the amount and degree, alleged by the claimant.” Craig, 76 F.3d at 594 (emphasis added). It is important to note that while the claimant must introduce objective medical evidence of an impairment, the evidence must only demonstrate that the impairment reasonably could be expected to produce the pain alleged. Id. at 595. Second, if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant’s underlying impairment actually causes her alleged pain. Craig, 76 F.3d at 595. The ALJ need not find either that the claimant’s pain is real, or, if he finds that it is real, that it is caused by her underlying medical condition if such findings are “inconsistent with the available evidence.” Id.
Here, the ALJ concluded that the objective evidence revealed that Morgan’s medical condition could reasonably be expected to produce the pain she alleged, and thus analyzed whether her medical condition actually produced the allegedly disabling pain. In discrediting Morgan’s allegations *724 of pain, the ALJ relied on “[Morgan’s] activities, particularly her hobbies of needlepoint, crochet, etc.; the lack of frequent emergency room visits or hospitalizations for pain; the absence of significant side-effects attributable to medication, the results of [the FCE], and the opinions of Drs. Kirkley and Holford.” (R. at 16.)
Dr. Kirkley opined that
[Morgan’s] MRI really didn’t show anything that I think would explain her symptoms.... I told her I could give her a note to be out of this work indefinitely because of complaints of pain but strictly speaking and on an objective basis I can find no reason why she theoretically could not do the job. It is true that people do have chronic pain and that it does sometimes keep an individual from being able to work. Unfortunately, the complaint is subjective....
(R. at 171 (emphasis added).) Although Dr. Kirkley did not question Morgan’s subjective experience of pain, he also believed that her pain was not caused by her underlying condition. The fact that Dr. Kirkley authorized Morgan’s absence from work based on her complaints of pain in no way casts doubt on his belief that Morgan’s condition did not produce her pain. And while it is true that Dr. Kirkley gave his opinion about the source of Morgan’s pain more than a year before she gave her testimony, Morgan has pointed to no additional objective evidence submitted after Dr. Kirkley gave his opinion that would call his opinion into doubt by linking her pain with her underlying condition. Moreover, the FCE concluded that Morgan was able to work an entire 8-hour day. Because the FCE measures a claimant’s functionality, which takes account of her pain, the FCE, like Dr. Kirkley’s opinion, also contradicts Morgan’s allegations of pain.
We believe that, given Dr. Kirkley’s opinion and the FCE, the ALJ’s decision to discredit Morgan’s allegations of pain was supported by substantial evidence. Even assuming the ALJ erred in crediting the other evidence contradicting Morgan’s allegations — her activities, her lack of hospitalizations, the absence of significant side-effects, and the opinion of Dr. Holford — this error was therefore harmless. See Ngarurih, 371 F.3d at 190 n. 8.
D. Morgan’s Husband’s and Daughter’s Responses to Questionnaires
Finally, Morgan argues that the ALJ impermissibly discredited the questionnaire responses submitted by her husband and daughter on the basis of inherent familial bias. While we agree with Morgan’s argument in principle, we would not reach the issue here, because the ALJ did not, in fact, discredit the observations of Morgan’s family members solely because of inherent familial bias.
In the order denying Morgan’s claim, the ALJ found, in part because of Dr. Kirkley’s opinion and the FCE, that “the allegations of disabling pain ... [were not] credible.” (R. at 16 (emphasis added).) The ALJ gave no indication that “the allegations” of disabling pain to which he was referring were only Morgan’s allegations, and not also the allegations of Morgan’s husband and daughter. Indeed, the most natural reading of the indefinite article “the” is that it refers to all, not just some, of the allegations of pain. We believe, therefore, that the ALJ discredited the questionnaire responses for the same reasons he rejected Morgan’s own testimony; i.e., Dr. Kirkley’s opinion that Morgan’s underlying condition did not cause her pain and the FCE indicating that Morgan maintained the functional capacity to work an 8-hour day. And as we concluded with respect to Morgan’s testimo *725 ny, any error the ALJ made in crediting the other evidence on which the ALJ relied — here, her activities, her lack of hospitalizations, the absence of significant side-effects, the opinion of Dr. Holford, and inherent familial bias — was harmless, because Dr. Kirkley’s opinion and the FCE were substantial evidentiary support for the ALJ’s decision to discredit Morgan’s husband’s and daughter’s observations.
III. Conclusion
We therefore vacate and remand the district court’s order with instructions for the district court to vacate and remand the ALJ’s order. On remand, the ALJ should, in a manner consistent with this opinion, redetermine Morgan’s RFC and, if required, accept additional evidence to determine whether relevant jobs exist for Morgan in the national economy.

VACATED AND REMANDED WITH INSTRUCTIONS

. In relevant part, the Code of Federal Regulations provides:
At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
At the third step, we also consider the medical severity of your impairment(s). If you have an impairments) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.... At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled____
At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.
20 C.F.R. § 404.1520(a)(4)(i-v) (2004).

. The "national economy” is defined as "the region where [the claimant] lives or in several regions in the country.” 20 C.F.R. § 404.1560(c)(1) (2004).

. It is more precise to say that the claimant's RFC is determined after step three — when the ALJ determines whether the claimant’s condition meets a listed impairment, see 20 C.F.R. § 404.1520(a)(4)(iii) (2004) — and that it is first applied at step four — when the claimant must prove that she is unable to do past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is then used again at step five. See SSR 96-8p *2. The Commissioner does not argue that Morgan was unable to do past relevant work. We, like the parties, therefore focus on the RFC only as it relates to step five.

. If the claimant's RFC reveals that she has the functionality to do a particular category of work, “sedentary” or "light,” for example, without further restrictions, the ALJ need not question a vocational expert. Instead, the ALJ may consult the grids found in 20 C.F.R. Part 404, subpart P, Appendix 2 (2004). Wilson v. Heckler, 743 F.2d 218, 222 (4th Cir. 1984). Because Morgan's RFC was "sedentary” with restrictions, the grids were inapplicable and testimony from a vocational expert was required. Id.

. The dissent chides us for focusing only on these four statements, but Morgan cites only these statements in her brief to support her argument that the ALJ erred by failing to apply the treating physician rule. Moreover, while the dissent’s summary of Morgan’s medical condition is accurate, it is also not relevant to the issue presented on appeal. That summary tends to show that Morgan’s impairment is severe, as required at step two of the five-step evaluation process, but it shows nothing new as to the impact of Morgan’s impairment on her functional capacity, as required at step five.

. In characterizing our analysis of this issue as internally contradictory, the dissent reveals a misunderstanding of the harmless error doctrine. For purposes of that doctrine, it would not make a difference if in fact “the FCE is an entirely inadequate substitute for Dr. Holdford’s medical opinions” as the dissent contends. Post at-. What matters is whether the FCE itself contains findings that are materially indistinguishable from Dr. Holford’s assumed medical opinion. Even the dissent does not argue that it does.