UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1692

ESSIE MORGAN,

Plaintiff - Appellant,

versus

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL
SECURITY,

Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  Henry M. Herlong, Jr., District
Judge.  (CA-03-1578-6-20AK)

Argued:  March 16, 2005              Decided:  August 5, 2005

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

Vacated and remanded with instructions by unpublished opinion.
Judge Williams wrote the majority opinion, in which Judge Luttig
concurred. Judge Gregory wrote a separate opinion concurring in
part and dissenting in part.

**ARGUED:** William Daniel Mayes, Aiken, South Carolina, for Appellant.
Robert Louis Van Saghi, Assistant Regional Counsel, SOCIAL SECURITY
ADMINISTRATION, Denver, Colorado, for Appellee. **ON BRIEF:** Frank W.
Hunger, Assistant Attorney General, UNITED STATES DEPARTMENT OF
JUSTICE, Office of Immigration Litigation, Washington, D.C.; J.
Strom Thurmond, United States Attorney, Christie Newman, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Columbia, South Carolina; Deana R. Ertl-Lombardi, Regional Chief

Counsel, Region VIII, Allan D. Berger, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Office of the General Counsel, Denver, Colorado, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

WILLIAMS, Circuit Judge:

Essie Morgan injured her back at work. Complaining of severe pain, she had surgery fusing several cervical vertebrae. The surgery, however, did not abate her complaints. An ALJ denied Morgan's application for Social Security benefits, and the district court affirmed. Morgan now appeals.

We conclude that because of faulty hypothetical questions the ALJ posed to the vocational expert, the record lacks substantial evidence to support the ALJ's finding that jobs exist in the national economy for someone with Morgan's impairments. We therefore vacate and remand the district court's order with instructions to vacate and remand the ALJ's order. On remand, the ALJ must reevaluate Morgan's residual functional capacity (RFC), and accept such additional testimony as may be necessary to decide whether relevant jobs exist.

Because, however, the ALJ's errors, if any, with respect to the application of the treating physician rule were harmless, and the ALJ's decisions discrediting Morgan's allegations and the responses of Morgan's husband and daughter were supported by substantial evidence, the ALJ need not reevaluate his decision on these matters on remand.

## I.  Factual Background

Morgan was employed as a cashier at a convenience store in Aiken, South Carolina.  In March 2000, she hurt her back scanning a twelve-pack at work.  She visited Dr. Douglas Holford, an orthopedic surgeon, who, in April 2000, performed surgery on Morgan removing two discs and fusing three cervical vertebrae.  Under Dr. Holford's care, Morgan returned to light-duty, part-time work.  In August 2000, Morgan began complaining of pain in her lower back and legs, and Dr. Holford's first impression was that the pain was caused by degenerative disc disease and sciatica.  Nevertheless, Dr. Holford authorized her to increase to moderate-duty, full-time work.

Morgan continued complaining of pain, and in January 2001, Dr. Holford referred Morgan to Dr. William Kirkley, an orthopedist, for testing.  Dr. Kirkley concluded from the tests results that Morgan's pain was "subjective," (R. at 171), and was not caused by her underlying condition.  In February 2001, Morgan quit her job. Dr. Holford later ordered a Functional Capacity Exam (FCE) to test Morgan's functional restrictions.  The FCE indicated that although Morgan's functional ability was limited, she could nevertheless work an eight-hour day.

On March 20, 2001, Morgan filed applications for Social Security benefits.  At the hearing on Morgan's claim, the ALJ admitted evidence as to the scope of Morgan's impairment.  The most

4

salient pieces of evidence were the FCE, Drs. Holford's and Kirkley's reports, Morgan's testimony, and written responses to questionnaires completed by Morgan's husband and daughter. The ALJ also accepted testimony from a vocational expert, who testified regarding the availability of jobs in the national economy.

After weighing this evidence, the ALJ denied Morgan's claim. The Appeals Counsel affirmed the ALJ's decision, as did the district court. Morgan now appeals, and we have jurisdiction under 28 U.S.C.A. § 1291 (West 1993).

## II. Discussion

Morgan argues that: (1) the vocational expert's testimony was insufficient evidence on which the ALJ could conclude the national economy had jobs for someone with her functional restrictions; (2) the ALJ improperly applied the treating physician rule in discrediting the opinion of Dr. Holford; (3) the record lacked substantial evidence upon which the ALJ could discredit her allegations of disabling pain; and (4) the ALJ erred in rejecting the written questionnaire responses submitted by Morgan's husband and daughter regarding her pain.

We must uphold the ALJ's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, we do not . . . reweigh conflicting evidence, make credibility determinations, or substitute" the ALJ's judgment with our own. Craig, 76 F.3d at 589.

With these principles in mind, we address Morgan's arguments in turn.

## A. The Vocational Expert's Testimony

Morgan first argues that her FCE reveals that her functional capacity is more limited than the hypotheticals the ALJ posed to the vocational expert, and that this fact resulted in the record lacking any relevant evidence on the question of whether she could engage in work that exists in the national economy. We agree.

The parties concede that the ALJ properly resolved the first four steps of the Social Security Administration's five-step sequential evaluation process.[1] The fifth step, however, is in

---

[1]In relevant part, the Code of Federal Regulations provides:

At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

At the second step, we consider the medical severity of

6

dispute.  The claimant is disabled at the fifth step if the ALJ determines that the claimant cannot "engage in any . . . kind of substantial gainful work which exists in the national economy."[2] 42 U.S.C.A. § 423(d)(2)(A) (West 2003).

To decide whether the claimant is disabled under this standard, the ALJ must proceed in a two-tiered analysis.  The ALJ must first determine the claimant's RFC.  See 20 C.F.R.

---

your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

 20 C.F.R. § 404.1520(a)(4)(i-v) (2004).

[2] The "national economy" is defined as "the region where [the claimant] lives or in several regions in the country."  20 C.F.R. § 404.1560(c)(1) (2004).

7

§ 404.1520(a)(4)(v), (e) (2004).[3] The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p at *1. To determine the claimant's RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members. 20 C.F.R. § 404.1529(c)(3) (2004).

The ALJ must then decide the ultimate issue of whether the Commissioner has satisfied her burden of showing that the claimant can engage in a job that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1) (2004); 20 C.F.R. § 404.1560(c)(2) (providing that the Commissioner bears the burden at the second tier of step five); Wilson v. Heckler, 743 F.2d 218, 220 (4th Cir. 1984) (same). In deciding whether the Commissioner has met her burden, the ALJ generally must accept evidence from a vocational expert, who, based on the claimant's age, education, work experience, and RFC, testifies whether there are jobs for such

---

[3] It is more precise to say that the claimant's RFC is determined after step three--when the ALJ determines whether the claimant's condition meets a listed impairment, see 20 C.F.R. § 404.1520(a)(4)(iii) (2004)--and that it is first applied at step four--when the claimant must prove that she is unable to do past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is then used again at step five. See SSR 96-8p *2. The Commissioner does not argue that Morgan was unable to do past relevant work. We, like the parties, therefore focus on the RFC only as it relates to step five.

a person in the national economy. See 20 C.F.R. § 404.1520(g)(1). The Commissioner can show that the claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).[4]

In this case, after considering the evidence presented, the ALJ relied primarily on the FCE in deciding Morgan's RFC. (R. at 15 ("I give greater weight to the results of actual testing[, i.e., the FCE,] than I do the opinion of Dr. Holford, especially in light of Dr. Kirkley's opinion." ).) The FCE determined, in relevant part, that Morgan was not able to do full time "sedentary" work, but she could work a full 8-hour day only if the job required her to sit, stand, walk, or climb each for no more than 1/3 of the day, or, in other words, she could do each activity for no more than 2 hours and 40 minutes per day. In determining Morgan's RFC, however, the ALJ found that Morgan was not able to do full-time "sedentary" work, but she could work a full 8-hour day at a

---

[4] If the claimant's RFC reveals that she has the functionality to do a particular category of work, "sedentary" or "light," for example, without further restrictions, the ALJ need not question a vocational expert. Instead, the ALJ may consult the grids found in 20 C.F.R. Part 404, subpart P, Appendix 2 (2004). Wilson v. Heckler, 743 F.2d 218, 222 (4th Cir. 1984). Because Morgan's RFC was "sedentary" with restrictions, the grids were inapplicable and testimony from a vocational expert was required. Id.

"sedentary" job if the job also allowed her to have a "sit/stand option." (R. at 16.)

Morgan contends that the FCE's sit, stand, walk, or climb combination is more restrictive than the RFC's "sit/stand option." We agree. Whatever a "sit/stand option" is, it provides only for sitting and standing, and, even interpreted in the manner most consistent with the FCE, it still provides that Morgan may sit or stand for 1/2 of an 8-hour day, or 4 hours. The "sit/stand option" would therefore require Morgan to sit and stand significantly longer than the restrictions indicated by the FCE.

The ALJ's error with respect to Morgan's RFC, moreover, translated into deficient hypotheticals the ALJ posed to the vocational expert. Each of the ALJ's hypotheticals assumed that Morgan could work a full eight-hour day alternating sitting and standing. (R. at 56-57.) According to the FCE, however, Morgan must also have the ability to walk or climb for 1/3 of the day in order to complete a full eight-hour workday. The vocational expert's testimony that the national economy has a significant number of jobs for an employee who is able to work a full eight-hour day alternating sitting and standing was therefore incapable of producing a reliable assessment of relevant work opportunities for Morgan. See Walker, 889 F.2d at 50.

10

B.  Dr. Holford's Opinions

Morgan next argues that the ALJ erred in failing to credit the opinions of Dr. Holford under the treating-physician rule.  For the reasons that follow, we hold that the FCE was substantial evidentiary support for the  ALJ's decision to discredit Dr. Holford's legal conclusions and that even if the ALJ erred in rejecting what we will assume is Dr. Holford's medical opinion, such error was harmless.

The Code of Federal Regulations draws a distinction between a physician's medical opinions and his legal conclusions.  "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), . . . and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2) (2004).  Legal conclusions, on the other hand, are opinions on issues reserved to the ALJ, such as "statements[s] by a medical source that [the claimant is] 'disabled' or 'unable to work.'" 20 C.F.R. § 404.1527(e)(1).  While the ALJ must give a treating physician's medical opinions special weight in certain circumstances, Craig, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

11

other substantial evidence" in the record (quoting 20 C.F.R. § 404.1527(d)(2))), the ALJ is under no obligation to give a treating physician's <u>legal conclusions</u> any heightened evidentiary value. <u>See</u> 20 C.F.R. § 404.1527(e)(3) ("We will not give any special significance to . . . [a treating physician's legal conclusions]. . . . "). The ALJ is not free, however, simply to ignore a treating physician's legal conclusions, but must instead "evaluate all the evidence in the case record to determine the extent to which the [treating physician's legal conclusion] is supported by the record." SSR 96-5p at *3.

In her brief, Morgan points to four opinions given by Dr. Holford: (1) "she probably qualifies for disability," (R. at 293); (2) "[h]er functional capacity evaluation basically figures that she can't work a total of an 8 hour day," (R. at 292); (3) "[s]he can possibly do modified duty [from her cashier job] but it would probably be a 4 hour day," (R. at 293.); and (4) "it would be hard [for her] to sit or stand for a 5 hour day."[5] (R. at 317.) The ALJ discredited Dr. Holford's opinions, noting that

---

[5]The dissent chides us for focusing only on these four statements, but Morgan cites only these statements in her brief to support her argument that the ALJ erred by failing to apply the treating physician rule. Moreover, while the dissent's summary of Morgan's medical condition is accurate, it is also not relevant to the issue presented on appeal. That summary tends to show that Morgan's impairment is severe, as required at step two of the five-step evaluation process, but it shows nothing new as to the impact of Morgan's impairment on her functional capacity, as required at step five.

12

statements that a claimant is 'disabled', "unable to work," can or cannot perform a past job . . . or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the [Code of Federal Regulations] and legal standards set forth therein. Such issues are reserved to the Commissioner. . . . Opinions on issues reserved to the Commissioner, such as [those] of Dr. Holford, can never be entitled to controlling weight. . . . I give greater weight to the results of actual testing[, i.e., the FCE,] than I do the opinion of Dr. Holford.

(R. at 15.) The ALJ did not err in concluding that at least the first three of Dr. Holford's opinions were legal conclusions and were thus deserving of no special weight. Dr. Holford's first two opinions--that Morgan was "disabled" and that she "can't work" an 8 hour day--are clearly legal conclusions. See 20 C.F.R. § 404.1527(e)(1). Dr. Holford's third opinion is also a legal conclusion: an opinion that Morgan cannot complete the duties of her previous job is merely a legal conclusion on an issue reserved for the ALJ at the fourth step of the sequential evaluation process. See 20 C.F.R. § 404.1520(a)(4)(iv) ("At the fourth step . . . . [i]f you can still do your past relevant work, we will find that you are not disabled."). Moreover, the FCE was substantial evidence to support the ALJ's decision to discredit these legal conclusions.

It is a closer question whether Dr. Holford's fourth opinion-- that "it would be hard [for Morgan] to sit or stand for a 5 hour day"--is a medical opinion. Even assuming, however, that this opinion is a medical opinion due special weight under the treating-

13

physician rule, any error in failing to credit this opinion was harmless. The ALJ attempted to adopt the FCE in determining Morgan's RFC.  As Morgan herself recognizes, however, the FCE does not materially contradict Dr. Holford's (assumed) medical opinion. Dr. Holford's opinion was that Morgan would have difficulty sitting and standing for more than 5 hours.  Nothing in his opinion is meaningfully contradicted by the FCE's determination that Morgan could not sit and stand for more than 2/3 of an 8-hour day, or 5 hours and 20 minutes, but that she could <u>also</u> walk or climb the remainder of the 8-hour workday.  Any error the ALJ may have made in rejecting Dr. Holford's medical opinion, which provided essentially the same time restriction on sitting and standing as the FCE, was therefore harmless.[6]  <u>Cf.</u> <u>Ngarurih v. Ashcroft</u>, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or

---

[6]In characterizing our analysis of this issue as internally contradictory, the dissent reveals a misunderstanding of the harmless error doctrine.  For purposes of that doctrine, it would not make a difference if in fact "the FCE is an entirely inadequate substitute for Dr. Holdford's medical opinions" as the dissent contends.  <u>Post</u> at 28.  What matters is whether the FCE itself contains findings that are materially indistinguishable from Dr. Holford's assumed medical opinion.  Even the dissent does not argue that it does.

14

the substance of the decision reached." (internal quotation marks omitted)).

### C. Morgan's Testimony

Morgan also argues that the sources on which the ALJ relied to discredit her own testimony regarding the disabling nature of her pain were not substantial evidence. For the following reasons, we hold that the opinion of Dr. Kirkley and the FCE were substantial evidentiary support for the ALJ's decision to discredit Morgan's testimony.

In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. First, because pain alone, no matter how disabling, cannot create a "disability" under the Social Security Act without an underlying medical condition that causes the pain, the ALJ must determine whether the claimant has produced medical evidence of a "medically determinable impairment which could reasonably be expected to produce . . . . the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594 (emphasis added). It is important to note that while the claimant must introduce objective medical evidence of an impairment, the evidence must only demonstrate that the impairment reasonably could be expected to produce the pain alleged. Id. at 595. Second, if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether

15

the claimant's underlying impairment <u>actually</u> causes her alleged pain. <u>Craig</u>, 76, F.3d at 595. The ALJ need not find either that the claimant's pain is real, or, if he finds that it is real, that it is caused by her underlying medical condition if such findings are "inconsistent with the available evidence." <u>Id.</u>

Here, the ALJ concluded that the objective evidence revealed that Morgan's medical condition could reasonably be expected to produce the pain she alleged, and thus analyzed whether her medical condition actually produced the allegedly disabling pain. In discrediting Morgan's allegations of pain, the ALJ relied on "[Morgan's] activities, particularly her hobbies of needlepoint, crochet, etc.; the lack of frequent emergency room visits or hospitalizations for pain; the absence of significant side-effects attributable to medication, the results of [the FCE], and the opinions of Drs. Kirkley and Holford." (R. at 16.)

Dr. Kirkley opined that

> [Morgan's] MRI really didn't show anything that I think would explain her symptoms. . . . I told her I could give her a note to be out of this work indefinitely because of complaints of pain but <u>strictly speaking and on an objective basis I can find no reason why she theoretically could not do the job</u>. It is true that people do have chronic pain and that it does sometimes keep an individual from being able to work. Unfortunately, the complaint is subjective. . . .

(R. at 171 (emphasis added).) Although Dr. Kirkley did not question Morgan's subjective experience of pain, he also believed that her pain was not caused by her underlying condition. The fact

16

that Dr. Kirkley authorized Morgan's absence from work based on her complaints of pain in no way casts doubt on his belief that Morgan's condition did not produce her pain. And while it is true that Dr. Kirkley gave his opinion about the source of Morgan's pain more than a year before she gave her testimony, Morgan has pointed to no additional objective evidence submitted after Dr. Kirkley gave his opinion that would call his opinion into doubt by linking her pain with her underlying condition. Moreover, the FCE concluded that Morgan was able to work an entire 8-hour day. Because the FCE measures a claimant's functionality, which takes account of her pain, the FCE, like Dr. Kirkley's opinion, also contradicts Morgan's allegations of pain.

We believe that, given Dr. Kirkley's opinion and the FCE, the ALJ's decision to discredit Morgan's allegations of pain was supported by substantial evidence. Even assuming the ALJ erred in crediting the other evidence contradicting Morgan's allegations-- her activities, her lack of hospitalizations, the absence of significant side-effects, and the opinion of Dr. Holford--this error was therefore harmless. See Ngarurih, 371 F.3d at 190 n.8.

### D. Morgan's Husband's and Daughter's Responses to Questionnaires

Finally, Morgan argues that the ALJ impermissibly discredited the questionnaire responses submitted by her husband and daughter on the basis of inherent familial bias. While we agree with

17

Morgan's argument in principle, we would not reach the issue here, because the ALJ did not, in fact, discredit the observations of Morgan's family members solely because of inherent familial bias.

In the order denying Morgan's claim, the ALJ found, in part because of Dr. Kirkley's opinion and the FCE, that "<u>the allegations</u> of disabling pain . . . [were not] credible." (R. at 16 (emphasis added).) The ALJ gave no indication that "the allegations" of disabling pain to which he was referring were only Morgan's allegations, and not also the allegations of Morgan's husband and daughter. Indeed, the most natural reading of the indefinite article "the" is that it refers to all, not just some, of the allegations of pain. We believe, therefore, that the ALJ discredited the questionnaire responses for the same reasons he rejected Morgan's own testimony; <u>i.e.</u>, Dr. Kirkley's opinion that Morgan's underlying condition did not cause her pain and the FCE indicating that Morgan maintained the functional capacity to work an 8-hour day. And as we concluded with respect to Morgan's testimony, any error the ALJ made in crediting the other evidence on which the ALJ relied--here, her activities, her lack of hospitalizations, the absence of significant side-effects, the opinion of Dr. Holford, <u>and</u> inherent familial bias--was harmless, because Dr. Kirkley's opinion and the FCE were substantial evidentiary support for the ALJ's decision to discredit Morgan's husband's and daughter's observations.

18

## III. Conclusion

We therefore vacate and remand the district court's order with instructions for the district court to vacate and remand the ALJ's order. On remand, the ALJ should, in a manner consistent with this opinion, redetermine Morgan's RFC and, if required, accept additional evidence to determine whether relevant jobs exist for Morgan in the national economy.

<u>VACATED AND REMANDED WITH INSTRUCTIONS</u>

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I agree with my good colleagues that the hypothetical questions submitted to the vocational expert were flawed, so the vocational expert's testimony cannot serve to support a finding that Morgan is not disabled. However, I must respectfully dissent from the remainder of the majority opinion.

I.

The ALJ discounted Dr. Holford's opinion by finding that, "I give greater weight to the results of [the FCE's] actual testing than I do the opinion of Dr. Holford, especially in light of Dr. Kirkley's opinion." Tr. 15. Morgan challenges this, and I agree that it materially misapplies the Commissioner's regulations and is not supported by substantial evidence.

The majority, instead, ignores the bulk of medical evidence Dr. Holford submitted and suggests that only a few select statements are at issue here. It then dismisses three of the four selected statements as legal opinions. This misses the forest for the trees: the record contains notes Dr. Holford submitted from some 19 visits, replete with medical impressions and opinions about Morgan's condition. The majority then claims that any remaining discounting of Dr. Holford's medical opinions was at best harmless error because it was similar to the FCE. This cannot be correct.

20

From the majority opinion one would never know the full range of medical evidence Dr. Holford submitted in this case.  From his records in the district court transcript ("Tr.") we learn the following:  After an emergency room visit and several examinations, on April 5, 2000 Dr. Holford found Morgan in "a lot of pain" and diagnosed her with a "C5-6 disc and spondylolisthesis at C6-7," Tr. at 308.  On April 18, 2000, he removed her C5-6 and C6-7 discs and fused her vertebrae from C5 through C7 with anterior plating.  Dr. Holford prescribed medication and directed therapeutic exercises.  By the end of May, he concluded that Morgan was doing "fair" and could return to light work in about four weeks.  Tr. 303.  Dr. Holford continued to see Morgan throughout that summer and prescribed medication and more exercises.

Morgan's pain did not abate.  In fact, after trying to grab an item that fell off of a shelf, she returned to the emergency room on June 17, 2000.  She still performed light work, but complained of pain in her shoulders.  On August 30, 2000, Dr. Holford noted that after squatting to stock a shelf at work, Morgan had developed lower back pain which radiated into her left leg.  An x-ray revealed "degenerative changes of the lumbar spine, mainly at 3-4 and at the thoracal lumbar junction." Tr. 298.  His impression was that Morgan suffered from sciatica and degenerative disc disease and he prescribed medication.  On September 20, 2000 Dr. Holford

felt that Morgan could gradually increase to working 40 hours per week with moderate duties. By late January of 2001, however, Morgan still complained bitterly of pain and tenderness in her back and neck. On January 30, 2001, Dr. Holford tested her range of motion and found "demonstrable weakness" in several areas. Tr. 296. He ordered an MRI.[1] On February 19, 2001, Dr. Holford noted that the MRI revealed multiple degenerative discs. Dr. Holford felt Morgan's job, which included "bending and stooping while trying to protect her [surgically repaired] neck probably aggravated a pre-existing condition." Tr. 295. He set up more tests.[2]

On March 20, 2001, Morgan returned to Dr. Holford, who reviewed the new tests, found Morgan with pain and tenderness in her back, diagnosed her with radiculopathy and axonal neuropathy, recommended epidural steroids, and kept her off of work. Dr. Holford stated that her "[p]rognosis is guarded," Tr. 294, and noted that she may qualify for disability for neck and lumbar spine disease. The steroids evidently offered some short-term aid, but Morgan still experienced pain. By April 18, 2001, Dr. Holford

---

[1]The MRI was conducted on February 9th by Dr. G. Paul Forsyth. Dr. Forsyth's impressions from the MRI were that Morgan had bulging discs throughout the lumbar area and some joint space narrowing but no disc fragment, spinal stenosis, or nerve compression.

[2]Dr. Melvyn L. Haas subsequently administered electro-diagnostic studies on February 28, 2001. His impression was "S1 radiculopathy, bilateral" and "early axonal neuropathy." Tr. 166.

22

found that Morgan had reached maximum medical improvement and had a "permanent impairment," but could possibly do "modified duty" for a 4-hour day if it involved intermittent standing, sitting and twisting. Tr. 293.[3]

Dr. Holford also recommended the FCE and, on August 15, 2001, reviewed it. He observed that she was "up and down," Tr. 292, and noted that Morgan's FCE "basically figures that she can't work a total of an 8 hour day.[4] She can't work for more than 4 hours." Id. He thought that Morgan qualified for disability "under cervical and lumbar disc disease. She has an inability to sit, bend, stoop, or twist long enough to work in an 8 hour day." Id. Later, on January 28, 2002, Dr. Holford again noted Morgan's back and neck pain and prescribed more medication. After a March 14, 2002 final evaluation, he indicated that Morgan "[s]till hurts quite a bit[,]" and had difficulty bending, stooping, twisting, straightening, and lifting. Tr. 317. He found that she had reached maximum medical improvement and that she would have

---

[3]On June 11, Morgan again reported to the emergency room and was given "trigger-point" injections for her back pain.

[4]Specifically, the cover letter to Dr. Holford from the rehabilitation center indicated that Morgan "is able to work at the "NO CLASSIFICATION Physical Demand Level for an 8 hour day . . . ." and that "[h]er specific acceptable Leg Lift capability was 0 lbs. and Torso Lift capability was 0 lbs." Tr. 290. The letter went on to state that Morgan "exhibited minimal symptom/disability exaggeration behavior by our criteria. . . ." Id.

23

difficulty sitting or standing for a five-hour day.  He also stated that "I think she qualifies for disability."  Id.

All this, of course, is significantly different from the conclusory assertions the majority selects and dismisses.  Merely because Dr. Holford at one point made some legal conclusions does not, of course, poison the many other medical opinions.  And the striking picture painted by Dr. Holford's medical impressions and opinions simply cannot be ignored.

B.

An examining physician's opinions are given more weight than the opinion of one who has not examined the claimant, 20 C.F.R. § 404.1527(d)(1), and a treating physician's opinion is especially valuable because such doctors

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

Id. § 404.1527(d)(2).  This subsection of the regulations goes on to explain that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

24

<u>Id.</u> Even when a treating physician's opinion is not given "controlling" weight it can still receive much more weight than other classes of evidence: "When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." <u>Id.</u> § 404.1527(d)(2)(I). Further,

> the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.

<u>Id.</u> § 404.1527(d)(2)(ii); <u>see</u> <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) (explaining § 404.1527(d)(2)).[5]

> In addition, § 404.1527(d)(3) states that:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that

---

[5]With regard to evaluating treating sources versus non-treating sources, this court has held that:

> "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable <u>clinical and laboratory diagnostic techniques</u> and is <u>not inconsistent with the other substantial evidence</u> in [the] case record, we will give it controlling weight." By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.

<u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996) (quoting 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)).

25

> opinion . . . . Furthermore, because nonexamining
> sources have no examining or treating relationship with
> you, the weight we will give their opinions will depend
> on the degree to which they provide supporting
> explanations for their opinions.

Id. Finally, the more consistent an opinion is with the record as a whole, the more weight it deserves, id. § 404.1527(d)(4), and specialists operating in their field of specialty receive more weight than those of non-specialists.  Id. § 404.1527(d)(5).

C.

Under these regulations, Dr. Holford surely stands alone as the source whose opinions should receive the greatest weight.  He is a specialist, and his opinions are plainly based upon far more than mere recitations of subjective statements of pain:  he conducted spinal surgery on Morgan, repeatedly and personally examined her and ordered, reviewed, and relied upon medical tests.[6] He monitored Morgan's rehabilitation and prescribed pain medication for a significant period of time.  Indeed, the record indicates that he saw her some 19 times -- much more frequently during the time in question than any other person who submitted evidence outside of Morgan's immediate family.  In short, here Dr. Holford

---

[6]The ALJ's implicit idea that Holford never administered "actual testing" during many examinations of Morgan flatly ignores the record.  Dr. Holford conducted numerous physical exams, see, e.g., Tr. 296, 298, 310, 317, and reviewed neurological exams, 299, X-ray tests, Tr. 298, 300-02, 310, MRIs, Tr. 295, 304, and nerve-conduction tests, Tr. 294.

is uniquely positioned to provide precisely the type of "detailed, longitudinal picture" of Morgan's medical impairments that we must value highly. Id. § 404.1527(d)(2). This long-term perspective is especially valuable in this kind of case, where a claimant proffers variable levels of pain from a severe impairment that could cause -- but may not necessarily result in -- debilitating, disabling pain. In such cases "snapshot" examinations are especially likely to mislead and "moving pictures" provided from records of long-term treating relationships are especially probative. To the extent that his opinion differs from the FCE -- a product of a single day's examination by a non-treating occupational therapist -- the ALJ was exactly backwards; Holford's opinions must merit <u>more</u> weight.[7]

Regarding the ALJ's discounting of Dr. Holford's medical opinions,[8] the majority claims that any error was harmless because

---

[7]Dr. Holford's medical opinions are also "consistent with the record as a whole." 20 C.F.R. § 404.1527(d)(4). Dr. Forsyth performed an MRI which revealed bulging lumbar disc material on multiple levels. Dr. Haas also diagnosed Morgan with S1 radiculopathy, bilateral and early axonal neuropathy. While Dr. Kirkley did not believe that these tests provided an objective explanation and termed Morgan's lower back pain "chronic mechanical," he also found Morgan's claims of pain sufficiently credible to remove her from work indefinitely. Moreover, Morgan testified that her pain had increased dramatically since she saw Kirkley over a year ago. Taken together, this all complicates Kirkley's brief note sufficiently that they simply cannot count as substantial evidence to trump Holford's medical opinions.

[8]I freely agree that certain of Holford's opinion are legal opinions, which the ALJ need not accept uncritically. But I must reemphasize, in case it is not perfectly clear, that such opinions

of the FCE, which the ALJ "attempted to adopt." Ante at 14.  The majority's awkward phrasing reveals problematic reasoning and internal contradictions.  The majority frankly admits that the ALJ materially misinterpreted the FCE to Morgan's detriment.  See ante pp. 9-10.[9]  That is, the ALJ explicitly used the FCE to discount Dr. Holford's opinions (because, in supposed contrast, it involved "actual testing"), Tr. 15, while the majority finds it sufficiently redundant with Dr. Holford's "(assumed)" medical opinion to make discounting Dr. Holford's opinion harmless error.  Ante at 14.  Both propositions cannot be concurrently right; in fact, both are quite wrong.  The FCE's results do overlap to some extent with Dr. Holford's findings.  But to the extent they are similar, the FCE is an entirely inadequate substitute for Dr. Holford's medical opinions.  Thus it cannot be harmless error.  Moreover, the ALJ did not view the two as similar, and so at a bare minimum the remand must be accompanied with instructions to construe the FCE as fully supporting Dr. Holford's opinions.  To the extent the two differ, for the reasons I have explained above, the FCE cannot possibly trump Dr. Holford.

_____

are few among many strongly supported medical opinions.

[9]Indeed, the ALJ did not stop there but went on and, shall we say, "attempted to" wield the FCE to discredit both Morgan and (in the majority's mind, at least) her family members.  See ante at pp. 16-18.

I would thus grant the medical opinions submitted by Dr. Holford significant, appropriate deference.


II.

The ALJ, while recognizing that "[t]he medical evidence in this case does establish the existence of a medically determinable impairment which is capable of producing" Morgan's symptoms, Tr. 15, nonetheless did not find Morgan's testimony of disabling pain and limited functional capacity credible. The explanation was based on:

> [c]onsidering the claimant's activities, particularly her hobbies of needlepoint, crochet, etc.; the lack of frequent emergency room visits or hospitalizations for pain; the absence of significant side-effects attributable to medication, the results of formal functional capacities evaluation in June 2001, and the opinions of Drs. Kirkley and Holford.

Tr. 16.

This explanation reveals important errors and is not supported by substantial evidence. First, it is difficult to imagine more benign and gentle hobbies than the occasional practice of needlepoint and crochet. Morgan testified that her pain varied, and that she only engaged in her hobbies "probably 45 minutes" on "a real good day" but never on a bad day. Tr. 51-52. Of course, a claimant need not be constantly bedridden or completely incapacitated to be found disabled. See Trotten v. Califano, 624 F.2d 10, 11-12 (4th Cir. 1980) ("An individual does not have to be

29

totally helpless or bedridden in order to be found disabled under the Social Security Act, otherwise, the ability to perform substantial gainful activity even one day each month or each year would disqualify an individual for benefits." (citations omitted)); see also Waters v. Bowen, 709 F. Supp. 278, 284 (D. Mass. 1989) (collecting cases where light housework and hobbies like crocheting did not disqualify claimants as disabled). Indeed, "while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig v. Chater, 76 F.3d at 593 (citations omitted); see also Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). Here, the ALJ's finding that needlepoint and crochet negate her testimony essentially requires Morgan to be consistently bedridden or proffer "objective evidence" of pain; it also ignores the fact that Morgan presented objective test results which her primary treating physician found fully capable of producing her disabling pain. This is error.

Also, Morgan was admitted to the emergency room more than once, and it would be passing strange to penalize a claimant for having the good sense and good fortune to receive regular treatment through specialists instead of returning to the emergency room over and over. Further, I am frankly puzzled as to how a lack of side-effects from pain medication can discount Morgan's testimony that she is still in pain despite the medication. And, as the majority

30

recognizes, <u>ante</u> at 9-10, the FCE restricted Morgan by, for example, stating that she could not sit or stand for more than 1/3 of the workday each.[10]

The ALJ's statement that Dr. <u>Holford's</u> findings somehow support that Morgan is <u>not</u> disabled is simply incomprehensible; no reasonable reading of his submitted evidence, as detailed above in Part I.A, can claim this.  If Dr. Holford's findings <u>did</u> contradict Morgan's claims, I must wonder why Morgan would argue for us to give them such great weight?  Finally, Dr. Kirkley, whatever else he wrote, specifically signed a document indicating that Morgan was unable to work indefinitely and only encouraged her to work if she felt capable.  For all of these reasons, I believe that the ALJ's decision to discount Morgan's testimony is unsupported by substantial evidence.

III.

Finally, the majority's novel suggestion that the ALJ discounted the evidence submitted by Morgan's husband and daughter

---

[10]More specifically, the FCE also stated that she could lift to her shoulders or carry, push, or pull only 8 pounds occasionally and 4 pounds frequently; it also noted that she could only lift overhead 3 pounds occasionally and 2 pounds frequently. Importantly, the FCE also reported that while Morgan could reach frequently, she could <u>never</u> bend, squat, kneel, or crawl and could not sit, stand, walk, or climb for more than 33% of a workday each. In response to Morgan's "physical demand classification," the FCE listed "no classification."  Tr. 255.  <u>With these restrictions explicitly noted</u>, the FCE found that Morgan's "current work status" was "qualified full time."  <u>Id.</u>

31

because of Dr. Kirkley and the FCE is unsustainable. The ALJ was crystal clear that the family members' testimony was "viewed as biased" and given little weight simply because of their relationship to Morgan.

Morgan's husband and daughter submitted questionnaires that indicated Morgan was able to engage in only the most limited of activities. Morgan's husband noted that she could not do things she likes to do, such as work in the yard and house or attend movies and rummage sales. He stated that Morgan cannot bend or lift, cannot sit or stand for any long period without pain, and experiences numbness that makes walking difficult. He wrote that he must help her complete basic tasks and sometimes must help her walk or stand up. Morgan's husband also explained that the pain has "taken away her independence. She was a very independent and active lady [and] that has all changed for her . . . ." Tr. 130.

Morgan's daughter echoed this assessment, writing that while her mother had previously been highly independent, she now "is reliant on others to perform the smallest of duties," Tr. 132, and has difficulty standing, cooking, cleaning, getting things out of cabinets, and walking up stairs. She also wrote that Morgan cannot play with her grandson or have him sit on her lap without pain and that she had to help her mother lay on the floor in the grocery store when her legs spasmed uncontrollably.

32

In direct response to this evidence, the ALJ simply stated that:  "[a]s immediate family members, the claimant's husband and her daughter would be expected to support the claimant's effort to secure disability benefits.  While I do not question the veracity of the claimant's husband or daughter, their statements are viewed as biased and I give them little weight."  Tr. 16.  In contrast to the majority's version of things, it is perfectly clear to me that the ALJ offered no other reason for discounting this evidence and then moved on to discuss Morgan's testimony.

As with other recommendations, the magistrate judge rightly recognized that the ALJ's per se discounting of Morgan's family members' observations for bias was reversible error.  Courts consistently and appropriately rely on the testimony of family members in the full range of matters.  As one court explained:

> Descriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 CFR § 404.1529(c)(3).  A disregard for such evidence violates the Commissioner's regulations about observations by nonmedical sources as to how an impairment affects a claimant's ability to work. Id. When an ALJ fails to believe lay testimony about a claimant's allegations of pain or other symptoms, he should discuss the testimony specifically and make explicit credibility determinations. Smith v. Heckler, 735 F.2d 312, 313 (8th Cir. 1984).

Behymer v. Apfel, 45 F. Supp. 2d 654, 663 (N.D. Ind. 1999); see also, e.g., Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground

33

for rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)); <u>Regennitter v. Comm. of the Social Sec. Admin.</u>, 166 F.3d 1294, 1298 (9th Cir. 1999) (noting claimant's mother's testimony, explaining that such lay testimony "provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." (citing <u>Smolen</u>)).  As Morgan argues, if family members' evidence <u>was</u> automatically worthless, it would be an odd exercise in futility to even allow them to fill out questionnaires and submit them into evidence.

## IV.

For these reasons, I believe (1) Dr. Holford's medical opinions should receive greater weight, and the evidence submitted (2) by Mrs. Morgan and (3) her family deserves proper consideration.  When all of Morgan's evidence is appropriately considered, the unavoidable conclusion is that the case should be remanded with instructions to award benefits.